BELLE C. HOLMES et al., *Appellees,* v. CAMPBELL COL-
LEGE et al., *Appellants.*

No. 17,704.

### SYLLABUS BY THE COURT.

1. WILLS—*Construction—Reformation—Intention.* The court
has no power to reform a will so as to conform to the inten-
tions of the testator shown by external evidence to be differ-
ent from those expressed in the instrument.

2. —————— *Mistakes—Testamentary Capacity.* The fact that a
testator is grossly mistaken as to the extent of his estate
does not establish a want of testamentary capacity, the true
test in this regard being whether he is capable of compre-
hending the quantity of his property and its value.

3. —————— *Setting Aside Portion of Will.* If a portion of a will
may ever be set aside for want of testamentary capacity,
while the rest is upheld, it can only be where the testator,
being able to transact business generally, and capable of dis-
posing of his property in other respects, is unable by reason
of some specific delusion or mental defect to comprehend the
effect of the provision in question.

4. —————— *Evidence — Want of Testamentary Capacity.* Evi-
dence that a testator who was otherwise competent made a
college, in which he had previously shown no interest, his
residuary legatee, under the belief that his estate was prac-
tically exhausted by specific bequests, when in fact the resi-
due amounted to more than two-thirds of the whole, is not
sufficient to warrant a finding of a want of capacity to make
such provision.

Appeal from Cowley district court. Opinion filed
July 6, 1912. Reversed.

*F. C. Johnson,* of Winfield, *A. E. Crane, E. D. Wood-
burn,* and *F. T. Woodburn,* all of Holton, for the ap-
pellants.

*A. M. Jackson,* and *A. L. Noble,* both of Winfield,
for the appellees.

The opinion of the court was delivered by ·

MASON, J.: Nancy V. Shaw executed a will July 24, 1909, making specific bequests amounting to $7715, to some forty different beneficiaries, in sums ranging from $5 to $1500, and naming Campbell College as residuary legatee. She died October 7, 1909, at the age of 68 years. Her estate was worth $25,000, consisting mainly of two farms in Cowley county, where she lived, together containing 480 acres. The will having been admitted to probate, some of the heirs brought an action to set it aside because of undue influence and want of testamentary capacity. A demurrer to the evidence was sustained so far as related to the former ground, but upon the latter the court set aside the residuary clause, sustaining the will in all other respects. The college appeals.

Among other matters the court found that in 1908, during the trial of a case before a justice of the peace, to which she was a party, the testator was nervous and excited, without apparent reason, and fainted and broke down while testifying as a witness, causing some of those present to regard her actions as strange or queer; that she was forgetful and her talk was disconnected; that she complained that her sisters did not visit her when she was sick, although in fact they visited her frequently; that she believed, without any proof, that her relatives wanted her property, and would try to defeat any disposition of it that was not satisfactory to them; that this belief was without foundation in fact, but the evidence did not show that she had no information on which it might be based, or that she persisted in it against evidence and probability and after argument to the contrary. The findings upon which the judgment mainly rests were as follows:

"Mrs. Shaw never intended to give to this College a sum very much in excess of $500.00. She did not know she was giving the College nearly three-fourths of her estate when she signed the will. . . . Mrs. Shaw

did not fully comprehend the nature and effect of the disposition of her estate she was making when she signed this will. She intended that her estate, after the payment of the specific bequests to those who lived in her family, and those for charity and church purposes and the bequest to the College should be divided among her relatives and the relatives of her husband, named in the will. She made the will under the belief that the specific bequests would dispose of practically all of her estate.

"Mrs. Shaw's mind, at the time this will was signed, was impaired by old age, by worry over her property and the fancied conduct of some of her relatives, and by disease, so that, while she was able to transact the business of renting her land and looking after collecting the rents, and having her pension looked after and her will made, she was not able to fully comprehend the nature and effect of the disposition of her property made by this will, and that the College would receive nearly three-fourths of her estate.

"The evidence does not show that Mrs. Shaw was of unsound mind, in the sense that she did not know what she was doing when she signed the will, or was unable to attend to her ordinary business. She knew to whom she wanted the property to go and that the will gave it to the persons and institutions to whom she wanted to leave it. So far as the specific bequests are concerned."

The last finding quoted must be regarded as definitely establishing the fact that so far as general capacity was concerned the testator was competent to make a will. It necessarily disposes of the evidence of her eccentric conduct by determining that she had the capacity to attend to ordinary business, and intelligently to plan a distribution of her property among a large number of persons, with appropriate special provisions as to each. Whether a part of a will can ever be set aside for want of testamentary capacity, while the rest of it is upheld, appears to be a novel question. A portion of a will may be refused probate because of undue influence, while the remainder is admitted. (*In re Welsh*, [5 N. Y. Surr.] 1 Redf. 238;

Note, 31 Am. St. Rep. 691.) An insane delusion of a testator will not invalidate his will unless it affects the disposition of his property (Note, 37 L. R. A. 265, 1st column; Dec. Dig., p. 901, § 38-2), and possibly the provisions resulting from it might be eliminated and the remainder enforced, although authority on the subject seems to be lacking. Perhaps, if a finding had been made, upon sufficient evidence, that Mrs. Shaw was under an insane delusion regarding Campbell College, which caused her to name it as her residuary legatee, the judgment rendered might be upheld. But there was neither finding nor evidence to that effect.

We think that fairly interpreted the findings may be thus summarized: Mrs. Shaw had capacity to make her will; she believed the specific bequests practically exhausted her property and it was only because of such belief that she allowed the provision to stand giving the residue to the college; if she had known its real value she would have left it to her heirs. The provision can not be stricken from the will, however, merely because it was the result of a mistake of fact on her part. This would be in effect to reform the will, and the court possesses no such power.

"Neither the will nor any part of it is affected by any mistake of law or fact which induced the testator to make it, and the courts can not amend or modify it so as to conform to what they imagine the testator would have done but for such mistake. For example, the will can not be denied probate nor any of its provisions limited or enlarged in effect because the testator did not understand their legal effect nor truly appreciate the proportions in which his property would be thereby distributed; nor because he would or might have made a different will." (Rood on Wills, § 165.)

(See, also, 2 Pomeroy's Equity Jurisprudence, 3d ed., § 871; Note, 65 Am. St. Rep. 521; Note, 6 L. R. A., n. s., 944; Note, 15 A. & E. Ann. Cas. 141.)

A knowledge by the testator of the extent of his estate is sometimes spoken of as necessary to give

validity to his will (20 Dec. Dig., p. 906, § 50), but the true test is whether he is capable of understanding it. "Actual comprehension of the nature and extent of one's property is not an essential element of testamentary capacity. The capacity to know is what the law regards." (28 A. & E. Encycl. of L. 73; *Roller et al. v. Kling et al.*, 150 Ind. 159, 164, 49 N. E. 948; *Reichenbach v. Ruddach*, 127 Pa. St. 564, 590, 18 Atl. 432.) It is true that here the trial court found in terms that Mrs. Shaw "was not able to fully comprehend the nature and effect of the disposition of her property made by this will, and that the College would receive nearly three-fourths of her estate." If this is to be interpreted literally, rather than as a statement that she did not in fact know the extent to which the college would profit by the will, we feel constrained to hold that it must be disregarded for want of evidence to support it. The testimony regarding her eccentric conduct does not answer the purpose, for it is disposed of by the finding that she had capacity to manage her business and to execute every part of the will excepting the residuary clause. There is nothing in the record to indicate that she was incapable of comprehending the value of her lands, or was under any insane delusion on that subject or on any other. The court found in effect that her belief that her relatives contemplated contesting her will, although without foundation in fact, was based upon information she had received and was not maintained against evidence and probability and after argument to the contrary. It therefore did not amount to a delusion. (28 A. & E. Encycl. of L. 80; Note, 37 L. R. A. 261.)

An earlier will was executed April 17, 1909. It was prepared by a lawyer from a memorandum including a specific bequest of $1000 to the local United Brethren church, and one of $500 to Campbell College, which was omitted from the first but was inserted in the second will. In sending to her the form for this first will the

lawyer wrote: "I noted that you had no provision for any balance that remained after paying off all the gifts. But I remembered that you said that whatever balance remained you wanted to go to the U. B. church so I stated it as you will see in section 19." In a letter directing the preparation of a new draft making various changes she wrote: "If there is any money left of my estate it may go to Campbell College in place of the united B. church." One witness testified that she had heard Mrs. Shaw, after referring to what she intended giving her heirs and the heirs of her deceased husband, say that she was going to give the remainder of her property to the church. A witness who testified that, from a writing made by Mrs. Shaw, he prepared the memorandum from which the first will was drawn, said that after the copy was made she spoke of giving something to some college—he did n't remember what one. The draftsman of the will testified that Mrs. Shaw and her husband had talked with him about the preparation of a joint will, and in the course of the conversation said that they intended to leave most of their property "to church or educational purposes, for what they would consider benefiting young people." The court found that she had not taken any particular interest in church work—not more than the ordinary member of a country church; that she had only a limited education and never manifested any particular interest in education; that there was no evidence that she had ever talked with anyone about colleges or college work or school work; that she told two neighbors that she was going to leave $500 to the church; that she never talked with anyone about leaving any of her property to Campbell College, or had in mind leaving anything to it until writing the letter already referred to; that there was no evidence that prior thereto she knew of the college or took any interest in it, or had heard of it, except that there had been a picture of it hanging in the church which she might have seen.

Holmes v. Campbell College.

Upon a motion for a new trial an affidavit of the draftsman of the will was presented, to the effect that in a number of conversations Mrs. Shaw had discussed the value of the estate, and in June, 1909, had told him that if she died as soon as she expected the residue to be willed to Campbell College would exceed $15,000. Upon this record the decision of the trial court that Mrs. Shaw did not know the value of her property is not subject to review, but as already stated, it does not warrant the setting aside of any part of the will. The findings as to her intentions would also be unassailable if that matter were to be arrived at otherwise than by the interpretation of the instrument itself. But we find nothing to support the view that, being of sound mind in other respects, she was incapable of comprehending the value of her estate and the effect of the legacy to the college.

A finding was made that the evidence did not show that Mrs. Shaw read the will, or that it was read to her, before its execution. This can not affect the matter, in view of the fact that the will was upheld except as to the residuary clause, and that was in accordance with her direction.

The judgment is reversed and the cause remanded with directions to render judgment for the defendants.