No. 32,858

James M. Hoover, *Appellee* v. Charles D. Roberts, Mary A. Roberts et al., *Defendants*, Blanche Hyland, *Appellant.*

(58 P. 2d 83)

Opinion filed June 6, 1936.

*J. R. Hyland* and *H. N. Hyland,* both of Washington, for the appellant.

*A. J. Freeborn, F. R. Lobaugh,* both of Washington, *Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was a suit in partition. The contesting parties claim title to interests in the real estate through conveyances from devisees under a will. Appellant, defendant below, contended for an undivided one-fifth interest in the real estate, while appellee insisted appellant owned only an undivided one-eighth interest. The answer must be found in the will. The will was duly probated on November 22, 1922. It has not been contested. The will purported to give a life estate in the real estate to the widow of the testator and remainder in fee to eight children, subject to the following provision:

"And should any of the children, heretofore named, die intestate before the execution of this will, and before the death of my beloved wife, then it is my will that the said share of said deceased child revert to my estate, and be divided among the remaining children as aforesaid."

Three of the children died intestate, prior to the death of the widow and subsequent to the death of the testator. One son died testate. Appellant contends the shares of the three children who died intestate reverted to and became the property of the remaining four living children and the devisees of the son who died testate. Maggie Testerman was one of the three children who died intestate.

After her death, her husband executed a mortgage to the First National Bank of Concordia, covering his interest in the real estate. On November 21, 1932, a foreclosure judgment was rendered. In the foreclosure suit plaintiff asked for a construction of the will in order to determine the interest on which it had a lien. The trial court found the husband of Maggie Testerman had an equal undivided one-sixteenth interest. This finding was on the theory each of the eight children of the testator received a one-eighth interest. No appeal was taken from that judgment. All devisees were parties to the action. On May 6, 1935, this partition suit was filed. The trial court held the will was construed in the mortgage foreclosure suit and the interests of the devisees, and those claiming under them, was then finally adjudicated. Appellant contends that judgment was utterly void. The contention is made upon the ground the district court did not interpret or construe, but reformed the will, and that the district court had no jurisdiction to reform a will. We therefore have three questions presented. First, did the district court in fact reform the will? Second, has it jurisdiction to reform a will? Third, if not, can appellant now collaterally attack the judgment of reformation? The questions will be treated in that order.

The pertinent portion of the petition in the foreclosure suit reads:

"That said testator was ignorant and uninformed as to the meaning and purport of the word 'intestate,' which word was inserted in said will by error of the scrivener who was directed by the testator to use language meaning 'without issue' and said scrivener used the word 'intestate' thinking and believing that it meant 'without issue.' . . ."

The foreclosure judgment recites:

". . . that in that portion of paragraph four hereinbefore quoted, the word, 'intestate,' was inadvertently and by mistake used in said paragraph for and instead of the words, 'without issue,' as was intended by the testator, and the language, 'before the execution of this will,' was intended by the testator to mean before the will was made operative by testator's death."

No extrinsic evidence was necessary for a logical interpretation of the testator's intention, as expressed by the phrase, "before the execution of this will." Clearly the testator did not mean to use the phrase "before execution" as meaning before the making of the will. He must have intended by the word "execution" the carrying out of the will. That, under the law was, of course, at his death. It was the only time at which the will could become operative. The

trial court in finding this to be the intention of the testator did not therefore transcend the bounds of interpretation or construction of a will.

The remaining portion of the above judgment presents quite a different question. The trial court lifted out of the will the word "intestate." Not only was that term, with a well-defined and clearly understood legal meaning, deleted from the testament but another phrase of very different meaning—"without issue"—substituted therefor. This was done upon extrinsic evidence, ten years after the decree of probate had been entered. The excision of one word and the substitution of another phrase, was ordered on the theory of correcting a mistake of intention. It altered the intention of the testator as expressed in the will by a clear, well-defined term.

Thompson on Wills, 2d ed., sec. 137, states the rule thus:

"A court of equity will not reform a will under the guise of an attempt to construe it."

In *Morse v. Henlon*, 97 Kan. 399, 155 Pac. 800, it was held:

"There is no occasion for employing rules for judicial construction of a will in search of the testator's intention where such intention is expressed clearly and unequivocally in the instrument." (Syl. ¶ 1.)

To the same effect are *Martin v. Martin*, 93 Kan. 714, 145 Pac. 565; *Schott v. Schott*, 128 Kan. 262, 276 Pac. 823; *National Life Ins. Co. v. Watson*, 141 Kan. 903, 905, 44 P. 2d 269; 2 Schouler on Wills, 6th ed., sec. 857.

In the Schott case it was held:

"Where the intention of the testator is plainly derivable from the text of the will itself, evidence aliunde is not admissible to establish that intention nor to modify the language of the testament." (Syl. ¶ 2.)

See, also, 2 Schouler on Wills, 6th ed. sec. 859.

In Thompson on Wills, 2d ed., sec. 137, it is said:

"Where the will as executed differs materially from the testator's instructions and actual wishes, attempts have been made to have the will reformed by courts of equity, but such relief has been regularly refused.

"One reason why a court of equity will not decree reformation of a will by correcting a mistake therein after probate is that such attempted reformation would constitute a collateral attack on the decree of the probate court. Another reason usually assigned, which seems to be sufficient, is that such an action is in the nature of one for specific performance, and requires a consideration for its support—an element lacking in the relations of a testator and beneficiary. Another reason sometimes given for refusing reformation to correct alleged mistakes is that it opens the door to fraud and perjury."

In *Ragan v. National City Bank of Rome,* 177 Ga. 686, 170 S. E. 889, it was held:

"There is no provision of law in Georgia which authorizes the reformation of a plain, written legal will. 'All wills must be taken to mean just what the language, considered in the light of the circumstances and situation of a testator, was intended by him to mean. Parol evidence is not admissible to show that the testator meant one thing when he said another.'" (Syl. ¶ 3.)

In *Sturgis et al. v. Work et al.,* 122 Ind. 134, 22 N. E. 996, it was said:

"It is an established rule that the chancery powers of a court cannot be invoked to reform a will by eliminating words or phrases, and supplying others, so as to make the instrument conform to what may be supposed to have been the real intention of the testator." (p. 135.)

See, also, *Sherwood v. Sherwood,* 45 Wis. 357; and 2 Page on Wills, 2d ed., sec. 1414.

In 1 Page on Wills, 2d ed., sec. 809, is contained this concise statement of the rule:

"The question always before the mind of the court is, not what should testator have meant to do or what words did he mean to use, but what is the reasonable meaning of the words which he has actually used."

In support of the right to resort to extrinsic evidence to determine testator's intention and as authority of a court to delete words from the will and to transpose words and substitute conjunctions, we are referred by appellee to *Smith v. Holden,* 58 Kan. 535, 50 Pac. 447; *Regnier v. Regnier,* 122 Kan. 59, 251 Pac. 392; 28 R. C. L. 225, 226, and 2 Schouler on Wills, 6th ed. 1080. A study of these citations will clearly indicate they are not authority for the *reformation* of a will. They are not authority for the excision of words of definite and fixed legal meaning, nor for the substitution of other terms or phrases which convey an entirely different intention and effect a wholly contrary result.

The excision of the word "intestate," and the substitution of the phrase "without issue," was neither interpretation nor construction of the words contained in the will, but was a plain reformation of the will. The district court was without jurisdiction to reform the will. In *Holmes v. Campbell College,* 87 Kan. 597, 125 Pac. 25, it was held:

"The court has no power to reform a will so as to conform to the intentions of the testator shown by external evidence to be different from those expressed in the instrument." (Syl. ¶ 1.)

In the course of the opinion in the Holmes case, this court quoted with approval from Rood on Wills, as follows:

"Neither the will nor any part of it is affected by any mistake of law or fact which induced the testator to make it, and the courts cannot amend or modify it so as to conform to what they imagine the testator would have done but for such mistake. For example, the will cannot be denied probate nor any of its provisions limited or enlarged in effect because the testator did not understand their legal effect nor truly appreciate the proportions in which his property would be thereby distributed; nor because he would or might have made a different will." (Rood on Wills, sec. 165.)

In *Dye v. Parker*, 108 Kan. 304, 194 Pac. 640, it was said:

"It is too well settled to require extended discussion that a court of equity has no power to reform a will. (See *Holmes v. Campbell College*, 87 Kan. 597, 125 Pac. 25, and authorities there cited; 23 R. C. L. 318-320.)" (p. 305.)

Now, can appellant collaterally attack a prior judgment rendered without jurisdiction?

Appellee insists the trial court had jurisdiction in the foreclosure suit, of the parties and the subject matter, that no appeal was taken from the judgment within six months and the judgment is final. The court did have jurisdiction of the parties. It also had jurisdiction of the subject matter, insofar as interpretation or construction of the will was concerned. To that extent the judgment has become final. The remedy, if the judgment was erroneous in that regard, was by appeal. The court, however, had no jurisdiction of the subject matter for the purpose of reformation. Appellee relies upon the decision in *Cross v. Hodges*, 124 Kan. 672, 261 Pac. 585, in which it was held:

"Where the *interpretation* of a will was properly drawn in question, the judgment of a district court of *competent jurisdiction,* whether correct or not, is a finality—where all parties concerned in the will and in the judgment were properly impleaded, and where no appeal was taken from that judgment within the time allowed therefor by the code of civil procedure." (Syl. ¶ 2.) (Italics inserted.)

That decision is not helpful here. It was a case involving interpretation and not reformation of a will. The court, of course, had jurisdiction to interpret the will. Its judgment unappealed from, regardless of how erroneous, became a finality. (*Rennolds v. Guthrie,* 103 Kan. 829, 177 Pac. 359.)

In *Emery v. Emery,* 104 Kan. 679, 180 Pac. 451, a divorce decree was entered and no appeal was taken. The decree included a provision that an eighty-acre tract of land, which had belonged to the husband, should be owned by the children, subject to a life in-

terest in their father. After the expiration of six months, the father brought an action against the children and the mother, asking that the title to the land be quieted in him. In a carefully considered opinion by the late Mr. Justice Mason, it was said:

"A judgment which declares a legal obligation where none exists under the statute may be effective until set aside in accordance with some prescribed method, upon the ground that where the court is required to pass judicially upon a question the binding force of its decision does not depend upon its correctness (*Investment Co. v. Wyandotte County,* 86 Kan. 708, 121 Pac. 1097); *but that principle applies only where the action taken is within the field over which the power of the court extends.* Although a court may be called upon to decide the extent of its own power, it cannot be true that where the question so presented is purely one of law, a mistaken decision affirming its jurisdiction must be deemed binding upon the parties to the litigation until set aside, for this view would, in effect, abolish the limits of jurisdiction, and a judgment (for instance) by a justice of the peace upon a claim for more than three hundred dollars would be merely erroneous, and not void. It may not always be easy to distinguish between the attempted exercise of a power that is utterly lacking, and the mistaken exercise of an existing power, but the soundness and importance of the distinction cannot be doubted." (p. 681.)   (Italics inserted.)

The trial court in the instant case had neither jurisdiction nor power to reform the will. In *Revere v. Revere,* 133 Kan. 300, 299 Pac. 595, it was said:

"She appeals, invoking familiar rules of law to the effect that judgments which have become final cannot be disturbed by subsequent proceedings. *These rules, however, do not apply to judgments which a court had no power to make,* and it has been repeatedly held in well-considered and stoutly contested cases that a district court has no power to make an award of permanent alimony in an indefinite amount to be payable in periodical installments." (p. 301.)   (Italics inserted.)

See, also, *Catren v. Catren,* 136 Kan. 864, 18 P. 2d 134.

In *Mastin v. Gray,* 19 Kan. 458, it was said:

"A judgment rendered with jurisdiction can never be impeached in a collateral proceeding; but a judgment rendered without jurisdiction may. In fact, a judgment rendered without jurisdiction is no judgment at all." (p. 466.)

See, also, *State v. Simmons,* 39 Kan. 262, 18 Pac. 177, and *Brockway v. Wagner,* 126 Kan. 285, 289, 268 Pac. 96.

The court being without jurisdiction to reform a will, the reformation was void. A judgment void for want of jurisdiction may be collaterally attacked. It may be vacated on motion at any time. (R. S. 60-3009.) It follows the judgment of the trial court must be reversed. It is so ordered.