No. 35,515

In the Matter of the Estate of W. H. Bush, Deceased. (MARY ELLEN BUSH, Executrix, and EARL G. OSWALD, Executor, *Appellants,* v. HARRY C. BUSH, *Appellee* and *Cross-appellant.*)

(127 P. 2d 455)

Opinion filed July 11, 1942.

*Maurice P. O'Keefe,* of Atchison, argued the cause, and *Karl W. Root,* of Atchison, was on the briefs for the appellants.

*Leon L. Askren,* of Atchison, argued the cause for the appellee.

The opinion of the court was delivered by

HOCH, J.: The principal question presented by this appeal is whether certain items listed in the inventory of a decedent's estate as debts due the estate were wiped out by the will of the testator and should therefore be stricken from the list of assets.

W. H. Bush, a resident of Atchison county, executed his will on

February 11, 1931. After his death on May 15, 1939, the will was duly probated and Mary Ellen Bush and Earl G. Oswald were named as executrix and executor. In the inventory thereafter filed were listed sixteen items as debts due the estate from decedent's son, Harry Bush. These items, covering loans or advances made to Harry Bush at different times between July 31, 1926, and April 14, 1935, were in amounts from fifty dollars to five hundred dollars. The total of all items was $2,750.

It is unnecessary to quote the will in full. The testator made various specific bequests to his wife and two daughters, and one to his wife in trust for his grandson. The residuary estate was then disposed of as follows:

"The balance of my estate is to be divided equally between, my wife, Mary Ellen Bush, and my children, Cora B. Bush, Sarah B. Bush, Jessie Bush Oswald, Mary Bush Smithson, and Harry Bush."

No reference was made in the will to any loans or advances theretofore made to the son, Harry Bush, or to any others.

Harry Bush filed a petition in the probate court in which he alleged that all debts of the estate—except certain charges not necessary to note here—and all legacies had been paid; that he was not indebted to the estate; that the sixteen items hereinbefore referred to were not assets of the estate and should be stricken from the inventory, that such items constituted gifts to him from his father, but that if they should be construed by the court to be "advancements," they were canceled by the will of the decedent.

The probate court held, after hearing, that four of the items, which the court designated "class A" and which amounted to an aggregate of $925, were promissory notes of Harry Bush which should be retained in the inventory as debts due the estate; that as to the remaining twelve items, which the court designated "class B," and which amounted to a total of $1,645—

"It was the intention of the testator at the time these documents, acknowledgments, receipts or notes, whatever they might be called, were given by Harry C. Bush, that they should be collected only from such interest as Harry C. Bush might have in the estate; that there was no enforceable liability on the part of Harry C. Bush to pay during the lifetime of donor or after his death, other than from the assets of the estate; that they were to draw no interest; that the documents in class 'B' are by their nature advancements (*Duckett Co. Clerk v. Gerig,* 79 N. E. 94)."

and that since the will did not specifically or inferentially refer to such "advancements," it must be presumed that the testator in mak-

ing his will thereby provided against them, and that they should be stricken from the inventory. From the decision of the probate court striking the class B items from the inventory the executor and executrix appealed to the district court. Harry Bush took no appeal from the court's decision that the class A items were debts and should be retained in the inventory, but filed a motion in district court to dismiss the executors' appeal.

Among the grounds assigned in the motion to dismiss were that the decision of the probate court was not a final and appealable order, and that—

"The appeal taken herein, by the appellants, is not an appeal from an order, judgment, decree or decision of the probate court, but is only an appeal from a part of an alleged order, judgment, decree or decision."

Having overruled the motion to dismiss, the district court heard the appeal as to the twelve items in class B and as to ten of the items, totaling $1,095, made a finding in conformity with the decision of the probate court, that they "were advancements and are not chargeable against said Harry C. Bush and should be stricken from the inventory." As to the remaining two items, totaling $550, the district court found that they were notes of Harry Bush, covering loans made after the will was executed and on that account should be retained in the inventory as debts owed to the estate.

The executors appeal from that part of the judgment striking the ten items from the inventory, and Harry Bush cross-appeals from that part of the judgment retaining in the inventory the two notes given after the will was executed. Harry Bush also cross-appeals from the order overruling his motion to dismiss the appeal from the probate court.

We first consider cross-appellant's contention that the appeal from the probate court should have been dismissed. His two principal arguments are, first, that the order complained of was not appealable as it was not "a final decision of any matter arising under the jurisdiction of the probate court" (G. S. 1941 Supp. 59-2401 [21]); and second, that the appeal was an attempt to appeal only "from a part of an alleged order, judgment, decree or decision."

It may be noted, in the first place, that it was not the appellant but the cross-appellant who brought the action in the probate court to strike the sixteen items from the inventory. Whether that was the proper method to follow to secure cancellation of the notes is not argued here and we shall not examine the question. In any

event, the probate court accorded him a large part of the relief which he sought. It struck twelve of the sixteen notes from the inventory. All it did as to the other four was to leave them in the inventory where the executors had listed them. We think that the decision of the probate court that twelve notes should be stricken from the inventory was clearly appealable, under paragraph (21), *supra*. Being stricken from the inventory, these notes would not thereafter be held for collection or considered in making final distribution. The decision determined the matter and the executors were entitled to a review.

In various cases we have held that an order of a probate court allowing a claim against an estate is appealable, and not only so by the heirs or other distributees but also by creditors of the estate. (*Sarbach v. Deposit Co.*, 99 Kan. 29, 32, 160 Pac. 900; *Smith v. Smith*, 107 Kan. 628, 630, 193 Pac. 314.) There is certainly like reason why a decision which reduces the listed assets of the estate should be held to be appealable. (See, also, 2 Bartlett's Probate Law and Practice, p. 497, ¶ 1274, and cases therein cited.)

We must also disagree with appellee's contention that the appeal should have been dismissed because it was an attempt to appeal from only a part of a decision. The decision to strike twelve notes from the inventory was complete in itself. It was not affected in any way by the fact that the court did not also strike some other notes from the inventory. Had the sixteen notes been made by sixteen different persons, could it be said that the executors would be precluded from appealing from the decisions on twelve of the notes because they did not also appeal from the decisions on the other four which were favorable to the estate? Obviously not. The fact that all sixteen were signed by one person does not alter the principle involved.

We have noted the case of *Hyland v. Hogue*, 131 Kan. 512, 292 Pac. 750, but find it clearly distinguishable from the one before us. In that case, Hyland, an administrator, brought action against Hogue, formerly guardian of the decedent, alleging wrongful management of the ward's estate and asking to have certain funds replaced in the estate. One cause of action was stated, but six items were listed as a basis for liability. In the district court a verdict was rendered against Hogue as to one item in the amount of $1,475 but in his favor as to the other items. Hogue paid the $1,475 into court and it was turned over to and receipted for by the adminis-

trator. The administrator then appealed to this court, claiming that Hogue should also have been held liable on the other items. The appeal was dismissed under the well-established rule that where a litigant voluntarily accepts the benefits of a judgment he thereby waives error and cannot appeal from the judgment. In the instant case it can hardly be said that the executors accepted benefits under the decision on the twelve items simply because they did not object to leaving the other notes in the list of assets.

At this point we may dispose of the question relating to the four notes which the probate court held should be retained as debts to the estate. We need not examine the basis of that decision. No appeal was taken to the district court as to them, nor does the record disclose that Harry Bush even asked the district court to consider them in connection with the appeal from the decision on the twelve notes. Decision on the four notes is not here for review.

We reach appellants' main contention that the court erred in holding that ten of the items, or notes, were "advancements" to the appellee, which were wiped out by the will. The "notes" were found, among other papers, in the bank box of the testator. Also introduced in evidence were canceled checks of the testator, corresponding in part at least to the "notes" of the son, and on some of these checks the word "loan" has been written. One of the "notes," typical of all those here involved, was as follows:

"Shannon, Kansas,
Sep 14, 1927.

"I, Harry Bush, agree that the amount of this note, one hundred and fifty dollars, $150.00, value received shall be deducted from my part of the estate of W. H. Bush (no interest). HARRY C. BUSH,
10-14-27"

None of the "notes" drew interest. As heretofore noted, the will made no references, directly or indirectly, to loans or advances made to the testator's son, Harry Bush.

The word "advancement" is somewhat loosely used in this case, as in many others. Strictly speaking, it is a term applicable only in case the decedent died *intestate*. Similar to many definitions which might be cited is the following from 1 Am. Jur., 715:

"In its strict technical sense, an advancement is a perfect and irrevocable gift, not required by law, made by a parent, during his lifetime, to his child, with the intention on the part of the donor that such gift shall represent a part or the whole of the portion of the donor's estate that the donee would be entitled to on the death of the donor, intestate."

It is clear that the instant "notes" did not represent debts actionable during the lifetime of the decedent. They were not payable on demand or at any date fixed, they drew no interest and they specifically provided that the amount advanced should be deducted from Harry Bush's share of his father's estate. Unquestionably, both under the general rule and under the specific provisions of our own statute (G. S. 1941 Supp. 59-510), they would have constituted "advancements" to be deducted from Harry Bush's share of the estate if the father had died *intestate*. The question is whether, as a matter of law, they must be considered as wiped out by the will which made no reference to them.

We shall not quote at length from the authorities, but we conclude, after examination not only of the many cases and textbook citations called to our attention by the parties but of others noted in our own research, that the overwhelming weight of authority supports the ruling of the trial court that the effect of the will was to wipe out the advances theretofore made to the son.

The reasoning behind the rule may be summarized as follows: When the owner of property makes a will he is presumed to have in mind whatever advances he has made to those whom he desires to share in his estate and to have written the will in the light of such advances; by making a will he intends to have the will itself indicate his full intention, to express wholly and without qualification how he desires his property to be distributed; that if he had not intended the beneficiaries to receive in full the benefits provided in the will, he would have made reference to deduction of such advances; that it is not within the province of those construing or executing the will to say that the testator would not have increased accordingly the shares of those who had received advances if he intended such advances to be deducted. In short, that the will itself is the final and complete expression of the testator's desire concerning property which he is free to dispose of—within the limits of the law—as he desires. (4 Page on Wills, Lifetime ed., p. 422, § 1551, § 2233; 1 R. C. L. § 6, p. 657 *et seq.;* 32 A. L. R. 730-732.)

Appellant cites our decision in *Guarantee Title & Trust Co. v. Siedhoff,* 144 Kan. 13, 58 P. 2d 66. But in that case the debt of the son to the father was evidenced by an ordinary demand note. It was not an advance. There was no provision that the note was to be paid out of the son's share in the father's estate. It was a present debt, actionable at any time. Accordingly, the case is not in point.

Nor does appellant call our attention to any Kansas case at variance with the general rule.

The remaining question, raised by the cross-appeal, as to the two notes covering advances made after the will was executed, is not free from difficulty. The question has not been passed upon by this court and we find some conflict of authority. We conclude, after considerable research, that the weight of authority and what seems the more logical and consistent reasoning support the view that advances, to be charged against the recipient's share of the estate, and made after the will was executed, are not wiped out by the will. That was the view taken by the trial court. In support of the contrary view it may be urged that the will speaks at the death of the testator and that the same reasoning which wipes out advances made prior to the execution of the will also applies, therefore, to advances made subsequent thereto. It may be argued that the testator could have changed his will at any time, and that not having done so after making the later advances, it is to be presumed that in the absence of provision indicating otherwise he intends his will to wipe out all advances no matter when made. The argument commands respect. However, we find the argument on the other side more persuasive. The general theory upon which advances made prior to execution of the will are held to be wiped out is largely based upon a presumption that when the testator made his will he had the prior advances in mind and in the light of such advances made such disposition of his property as he desired. It would be stretching this presumption to make it include subsequent advances which he could not then have had in mind. Moreover, if a testator intends that advances which may be made after the will is executed are to be wiped out, what point is there in treating them, when they are subsequently made, as "advances" at all? Why provide that they are to be charged against the recipient's share, when no such result is to follow? Why are they not made as outright gifts and the result sought by the testator thus simply accomplished? Advances, subsequent to execution of the will, seem to fall more logically into the same class with true "advancements" which obtain in cases of intestacy and are charged against the recipient's share of the estate. It may be said further that this view is in line with the general doctrine of ademption, the limits and intricacies of which lie beyond any need of examination here. Suffice it to say that the doctrine, as the term has come to be used in modern law, applies to the act of a testator in paying to a

legatee, in the lifetime of the testator, a legacy he had previously provided by will, or in satisfying it by giving something of value in its place. Under such circumstances the legacy is said to have been wholly or partially satisfied or adeemed. In the recent comprehensive work on The Law of Wills, by Page, wherein the doctrine of ademption is discussed at length, it is said that a residuary legacy may be adeemed. (See 4 Page on Wills, Lifetime ed. ch. 43, pp. 354 to 419, and particularly § 1546, p. 413, and cases cited in footnote 3.) The reasoning of the ademption doctrine is in harmony with the view that advances "to be paid out of the share of the estate" and made after the will has been executed are to be so paid, and are not wiped out by the will. The view was thus expressed in the English case (1870) of *Meinertzagen v. Walters*, 7 L. R. ch. 670, 674:

"A testator who has divided his residue among his children, either equally or in any other proportion, does not intend to alter that equality or proportion by making a subsequent gift to a particular child."

Perhaps the leading case, directly in point, supporting the view here adopted, is *Hayes v. Welling*, 38 R. I. 553, 96 Atl. 843, 851, syl. ¶ 6. Therein it was said:

"It is plain that if advancements are made after the execution of a will, without more, they will be deducted from the child's distributive share of the estate," (p. 570.)

many supporting cases being cited.

In support of the contrary view, cross-appellant calls our attention to a statement in 32 A. L. R. p. 732, that—

"The law presumes that when a person makes a will, he will thereby provide against what he has advanced or *may advance* the beneficiaries therein named." (Italics supplied.)

Three supporting cases are cited in the annotation, but upon examination we do not find them very persuasive. It is true that in the first case, *Little v. Ennis*, 207 Ala. 111, 92 So. 167, the statement above quoted appears, but it is not clear from the opinion that the advances involved in the case were made after the will was executed. In the second case of *Kragnes v. Kragnes*, 125 Minn. 115, 145 N. W. 785, the opinion refers to the wiping out of advances made "during the life" of the testator, but the advance being considered was in fact made *before* the will was executed. The third case of *Gilmore v. Jenkins*, 129 Ia. 686, 106 N. W. 193, we do not think helpful to cross-appellant. In the opinion it is stated that in making a will the testator is presumed "to have considered the advancements and the

bequests made in the will collectively." This principle clearly supports a cancellation of advances made prior to the will, but how can the testator be presumed to have considered, along with his bequests, advancements which had not then been made? We have pursued this important subject at this length because it is a case of first impression in this state. Further discussion would unduly extend the opinion.

It follows from the conclusions stated that the judgment should be affirmed, both as to the appeal and the cross-appeal. It is so ordered.