No. 50,267

In the Matter of the Estate of Maggie L. Wernet, Deceased.

(596 P.2d 137)

Opinion filed June 9, 1979.

*Gary C. Hagan,* of Hutchinson, argued the cause and *Arthur H. Snyder,* of Hutchinson, was with him on the brief for appellant Clifford F. Fry.

*Michael T. Mills,* of Mills & Mills, of McPherson, argued the cause and was on the brief for appellant Wilbur Dean Fry.

*William L. Mitchell,* of Mitchell and Henry, of Hutchinson, argued the cause and was on the brief for appellee Gerald L. Fry.

*W. Y. Chalfant,* of Branine, Chalfant, Hyter & Hill, of Hutchinson, argued the cause and was on the brief for appellee LeRoy F. Fry.

*Arthur C. Hodgson,* of Hodgson & Kahler, of Lyons, argued the cause and was on the brief for appellee Kenneth J. Nelson, Administrator C.T.A.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by several parties from orders of the district court in the probate proceedings in a testate estate. The administrator c.t.a. filed a petition in the probate court for construction of the will of Maggie L. Wernet, deceased, for instructions as to the proper distribution of the assets in the estate and for other relief necessary to complete the proper administration of the estate.

Maggie L. Wernet died testate on April 11, 1976, a resident of Rice County. Her will, executed June 9, 1958, was admitted to probate May 27, 1976. The executrix named in the will declined to serve and Kenneth J. Nelson was appointed and qualified as administrator c.t.a. Following his appointment he filed a petition for construction of the will and other relief which was transferred to district court under K.S.A. 59-2402a, since repealed.

In view of the conflicting positions of the parties on appeal and the issues raised thereby, the last will and testament of Maggie L. Wernet will be set out in full. It reads:

"LAST WILL AND TESTAMENT
OF
MAGGIE L. WERNET

"I, MAGGIE L. WERNET, residing at Little River, Rice County, Kansas, being of lawful age, of sound and disposing mind and memory, and not under any

restraint, do hereby make, publish, and declare this to be my Last Will and Testament, hereby revoking any and all former Wills by me at any time made.

"1. I direct that all my just debts, including funeral expenses and the cost of a suitable marker at my grave, be paid by my Executrix at her earliest convenience.

"2. I hereby authorize and empower my Executrix to sell my home described as Lot Nine (9) and the South Ten Feet (S 10´) of Lot Ten (10) in Block Twenty (20) in the City of Little River, Rice County, Kansas, such sale to be for cash, but my Executrix shall not be required to obtain an order from the Probate or any other Court for the purpose of making this sale, and she shall sell for such sum and at such time and at public or private sale as in her sole discretion appears to be most advantageous to my Estate.

"3. I give, devise, and bequeath to my nephew, GERALD L. FRY, the Northwest Quarter (NW/4) of Section Twenty-seven (27), Township Twenty (20), Range Six (6) West in Rice County, Kansas, to be his in fee simple absolute forever.

"4. I give, devise, and bequeath to my nephew, LE ROY F. FRY, the Southwest Quarter (SW/4) of Section Twenty-seven (27), Township Twenty (20), Range Six (6) West in Rice County, Kansas, to be his in fee simple absolute forever.

"5. I give, devise and bequeath to my nephew, WAYNE A. FRY, the South Half (S/2) of the Southeast Quarter (SE/4) of Section Two (2), Township Twenty (20), Range Six (6) West, except the West Twenty-five (W 25) acres thereof, in Rice County, Kansas, to be his in fee simple absolute forever.

"6. It is my desire that my five nephews, as follows, GERALD L. FRY, LE ROY F. FRY, WAYNE A. FRY, CLIFFORD F. FRY, AND WILBUR DEAN FRY, shall each receive equal portions of my Estate. Knowing that the respective values of the land above devised are not now equal and might, through oil discovery or other factors, by the time of my death, be materially different from the values at the time of making this Will, I provide in Paragraphs (A) and (B) hereafter for certain cash payments to equalize my remembrances to said nephews. As used in Paragraphs (A) and (B) hereafter, the word 'value' shall be absolutely defined as valuation made by the official appraisement made in my Estate and the respective values of the three pieces of real estate devised at Paragraphs 3, 4, and 5, above shall be conclusively determined by said appraisement for the purposes of said Paragraphs (A) and (B).

"(A) To CLIFFORD F. FRY and WILBUR DEAN FRY and each of them, I give and bequeath a sum of money equal to the most valuable land described in Paragraphs 3, 4, and 5, above, as determined by said appraisement, subject, however, insofar as WILBUR DEAN FRY is concerned, to the provisions of Paragraph 7, of this Will.

"(B) To each of said nephews who is devised land in Paragraphs 3, 4, and 5, which land is of less value than the most valuable land devised in said paragraphs, I give and bequeath a sum of money equal to the difference between the value of the most valuable of said lands less the value of the land that such nephew takes in the Paragraph 3, 4, or 5, applicable to him, subject, however, insofar as GERALD L. FRY is concerned, to the provisions of Paragraph 7, of this Will.

"7. At the time of making this Will, I am the owner of a mortgage in the face

amount of approximately $19,000 from WILBUR DEAN FRY and a mortgage in the approximate amount of $15,000 from GERALD L. FRY. Any interest due on either of said mortgages at the time of my death or that may be incurred after my death, is hereby forgiven. As to any amounts of principal that may be owing, however, on either of said mortgages, I specifically provide that such principal owing from said nephews or either of them, shall be deducted from what under the foregoing paragraphs of this Will, would be their respective interests in my Estate.

"8. I give and bequeath to the following named persons the following specified sums to be paid to them in cash should they survive me, and at such time as is convenient to my Executrix:

HUGH BISHOP ...........................$1,000.00
GERALD HUNSINGER .....................$1,000.00
LITTLE RIVER LIBRARY ASSOCIATION ......$2,000.00
DOROTHY SITTS .........................$1,000.00
ADAH FRY .............................$1,000.00

"9. All the rest, residue, and remainder of my Estate, real or personal, and wherever located, I give, devise and bequeath to my five (5) nephews above named, in equal undivided interests, and to be theirs in fee simple absolute forever.

"10. I nominate and appoint MARY HELEN MUNSELL, of Little River, Kansas, as sole Executrix of this, my Last Will and Testament, and direct that she be not required to give bond in a sum exceeding $10,000.00, and request that the Court grant Letters Testamentary to her upon her furnishing bond in a sum not to exceed $10,000.00.

"IN WITNESS WHEREOF, I have hereunto subscribed my name and caused this, my Last Will and Testament, consisting of two (2) pages, including the attestation clause, to be executed, declared, and published at Lyons, Kansas, this 9th day of June, 1958."

Signatures of the testatrix and witnesses and the attestation clause, all in proper order, are omitted.

The five nephews, Gerald L. Fry, LeRoy F. Fry, Wayne A. Fry, Clifford F. Fry and Wilbur Dean Fry, all survived their Aunt Maggie. The home of Mrs. Wernet described in paragraph 2 of her will was sold prior to death and the real properties described in paragraphs 3, 4 and 5 were still owned by her at death. The indebtedness of Wilbur and Gerald described in paragraph 7 had not been paid in full and, although the exact amount still owed has not been finally determined, it is shown by the inventory and appraisement as being $19,000 owed by Wilbur and $17,000 owed by Gerald. Both concede the debts are valid and enforceable although the final amounts are yet to be determined. The inventory and appraisement also shows LeRoy as owing $10,000 and Wayne $5,000. The validity of these debts is not disputed although they also are subject to final determination as to the

exact amounts. The loans to Gerald were in 1957 and 1971, LeRoy in 1959, Wayne in 1959 and Wilbur in 1956. These debts are properly shown as assets of the estate, as interest and possibly some principal has been paid and no question of the bar of the statute of limitations is raised.

Clifford is shown as owing the estate $15,300 for loans received in 1957 and 1958. It is conceded that Clifford paid no interest or principal for more than five years prior to his aunt's death.

The total appraised value of the estate is shown on the inventory as $333,261.05 and is as follows:

| | |
|---|---|
| NW/4, Sec. 27-20S-6W, Rice County, Ks. | $96,000.00 |
| Oil production on NW/4 | 5,000.00 |
| SW/4, Sec. 27-20S-6W, Rice County, Ks. | 52,750.00 |
| S/2 of SE/4, Sec. 2-20S-6W, Rice County, Ks. except west 25 acres thereof | 26,500.00 |
| Indebtedness of LeRoy | 10,000.00 |
| Indebtedness of Wayne | 5,000.00 |
| Indebtedness of Gerald | 17,000.00 |
| Indebtedness of Clifford | 15,300.00 |
| Indebtedness of Wilbur | 19,000.00 |
| Other personal property | 86,711.05 |
| | $333,261.05 |

The real estate devised to Gerald, LeRoy and Wayne accounts for $180,250.00 and the remaining property totals $153,011.05, making it obvious that the desire of Mrs. Wernet, as expressed in paragraph 6 of her will, cannot be carried out. Faced with these realities, the administrator c.t.a. filed his petition for construction of the will and other relief.

Gerald, LeRoy and Wayne contended in the court below that the specific devises of real estate in paragraphs 3, 4 and 5 were clear and controlling and that they should each receive the real estate devised to each of them. Clifford and Wilbur contended paragraph 6 of the will was controlling, that each nephew should receive the same amount from the estate after payment of all debts, taxes (except Kansas inheritance taxes), costs of administration and cash bequests listed in paragraph 8 and that the real estate should be charged with the debts, etc., and legacies or be sold if necessary to effect such an equal distribution. In addition, Clifford contended that the $15,300.00, shown on the inventory as being owed by him, was actually an advancement received

prior to the making of the will and that as it was not mentioned in the will, any indebtedness which he might otherwise have owed was cancelled. In the alternative, he argues the debt, if not an advancement, is barred by the statute of limitations and therefore is not collectible from or chargeable as an offset to him.

The trial court made the following findings of fact and conclusions of law:

### "FINDINGS OF FACT

"1.   This matter is before the Court on the Petition to Construe the Will of Maggie L. Wernet, dated June 9th, 1958.

"2.   The above captioned case is governed by the law relative to construction of wills set forth in the case of In re Estate of Graves, 203 Kans. 762.

"3.   There is no uncertainty or ambiguity in the Will of the decedent.

"4.   The obligation of the Court in the above captioned case is to determine the effect of the Will where there are insufficient assets in the Estate to carry out the intentions of the decedent.

"5.   Paragraphs Three, Four and Five of the Will devise real estate to three nephews with the following result.

   a.   The Northwest Quarter of Section Twenty-seven (27), Township Twenty South (20S), Range Six West (6) of the 6th Principal Meridian in Rice County, Kansas,

shall be the property of the decedent's nephew, Gerald L. Fry.

   b.   The Southwest Quarter (SW/4) of Section Twenty-seven (27), Township Twenty South (20S), Range Six West (6) of the 6th Principal Meridian in Rice County, Kansas,

is devised to LeRoy F. Fry and shall be his property.

   c.   The South Half (S/2) of the Southeast Quarter (SE/4) of Section Two (2), Township Twenty South (20S), Range Six West (6) of the 6th Principal Meridian, in Rice County, Kansas, EXCEPT the West Twenty-five (W 25) acres thereof,

is devised to Wayne A. Fry, a nephew and shall be his property.

"6.   One of the nephews, Clifford F. Fry, claims that loans to him in the amount of Fifteen Thousand Three Hundred Dollars ($15,300.00), which are listed in the Inventory as an asset of the Estate, are barred by the Statute of Limitations because no interest had been paid on the note since they were made. The Court does not agree with this contention and the Court finds that unpaid notes are an asset of the Estate.

"7.   Debts, taxes, except State Inheritance Taxes, and the cost of administration shall be paid in full.

"8.   The specific bequests set forth in Paragraph Eight (8) of the Will shall be carried out to the extent that there is money available to carry them out.

"9.   The residue of the Estate, if any there be, shall be divided equally between Wilbur Dean Fry and Clifford F. Fry.

### "CONCLUSIONS OF LAW

"The Court considers that Conclusions of Law shall be in conformity with the Findings of Fact set out above. Such conclusions being as follows.

"1. The factual situation between the case being considered by the Court and the Supreme Court case of In re Estate of Graves 203 Kans. 762, being similar on the facts, the Court finds that as a matter of law that said Graves case governs the law applicable in the instant case.

"2. The intention of the testator being clear and unequivocally expressed there is no occasion to employ rules of judicial construction and the Will will be enforced in accordance with its terms and provisions.

"IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED: that the Order of this Court shall be in accordance with the findings of fact and conclusions of law set forth above. The Memorandum Decision of the Court dated June 8th, 1978, shall be a part of this Journal Entry together with a copy of the Decedent's Will, dated June 9th, 1958."

Wilbur and Clifford have appealed from the findings, conclusions and orders of the trial court. The administrator c.t.a., renews his request for instructions on administering the estate.

While the terms and conditions of the will of Maggie L. Wernet are clear and unambiguous, problems have arisen due to an insufficiency of assets to carry out the clear directions in the will. It is apparent that at the time the will was executed Mrs. Wernet must have had sufficient cash and other assets to effect an equal distribution of her estate when the values of the specific devises to Gerald, LeRoy and Wayne were taken into consideration. Unfortunately, inflation has had a two-fold effect upon Mrs. Wernet's plans; both disastrous. The values of the three parcels of farmland have skyrocketed while her personal estate has, in all probability, been reduced considerably through higher living costs, lower income, fixed values of intangibles and low prices for farm commodities.

With the foregoing factual background, we will turn to the issues raised upon appeal. All parties agree as to the basic rules to be followed in the construction of a will. However, such rules need not be repeated here.

In *Johnston v. Gibson,* 184 Kan. 109, 334 P.2d 348 (1959), we held:

"Where a court, either trial or appellate, is called upon to determine the force and effect to be given the terms of a will, its first duty is to survey the instrument in its entirety and ascertain whether its language is so indefinite and uncertain as to require the employment of rules of judicial construction to determine its force and effect; and where from an analysis of the entire instrument no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and provisions." Syl. 3.

See also *In re Estate of Graves,* 203 Kan. 762, 457 P.2d 71 (1969).

Is the will of Maggie L. Wernet ambiguous and is it necessary to apply rules of judicial construction? We think not.

Paragraph 1 of the will directs that debts, funeral expenses, etc., be paid; paragraph 2 authorizes the sale of her home (which was done prior to death); paragraph 3 devises specific real property to Gerald *"to be his in fee simple absolute forever"*; paragraphs 4 and 5 devise specific real properties to LeRoy and Wayne in the same language; paragraph 6 expresses the desire that all five nephews shall share equally in the estate and recognizing that the values of the real properties are not the same and may change materially makes provision to equalize the share of each nephew by *payment of cash* sufficient to bring the shares of four of the nephews to that of the one receiving the most valuable piece of real estate; paragraph 7 forgives any interest which might be owed by Wilbur and Gerald on certain existing indebtedness; paragraph 8 provides cash bequests to others totaling $6,000.00; paragraph 9 divides the residue of the estate equally among the nephews and paragraph 10 provides for the appointment of an executrix.

As stated in *Graves:*

"After a careful examination of all the language of the will we find it to be clear, certain and free of ambiguity. There is nothing to indicate that the testatrix did not use the words she intended to use. Neither is there anything to indicate she did not understand the meaning of the words used. It is clear that the testatrix wanted the legacies of her three children equalized, provided it could be done from her 'personal estate.'

"The language of the will being clear, definite and unambiguous, we need not, and should not, consider rules of judicial construction to determine the intention of the testatrix." 203 Kan. at 768.

The language of the will now before the court being clear, certain and free of ambiguity, we need not consider the application of rules of judicial construction.

All parties agree that in the interpretation of wills the primary function of the court is to ascertain the testator's intent from the four corners of the will and to carry out that intent if possible, and not contrary to law or public policy. *In re Estate of Cline,* 170 Kan. 496, 227 P.2d 157 (1951). It is at this point that the parties differ. The trial court held, and the appellees contend, that our decision in *Graves* is controlling; that paragraph 6 of the will does not create a charge upon the specific devises and that the

equalization desired by the testator must come from whatever assets are available, if any, other than the real properties.

In *Graves* a similar situation existed. The testatrix made certain specific devises of real property to her son, Harlan, and daughter, Mary Faye, "To Have and To Hold, forever." She then provided that *from her personal estate* her daughter Gena would receive property or money sufficient to give her an equal share with Harlan and Mary Faye. After payment of debts, expenses, taxes, etc., there were insufficient remaining assets to provide an amount to Gena equal to the value of the real properties received by Harlan and Mary Faye. The court held that while the intention of the testatrix was clear that her children should share equally, the court could not change her will and assert a charge against the real estate to effect such equalization.

The rules governing charging legacies upon the testator's realty are found in 80 Am.Jur.2d, Wills §§ 1768-70. Real property is not chargeable with the payment of legacies unless the intention of the testator to so charge is expressly declared or arises by clear implication from the language of the will. § 1768. There is no *express* charge indicated in the *Wemet* will, therefore the rules governing express charges are not necessary for our analysis. Under some circumstances the intention to charge realty will be *implied* when personalty is insufficient to pay legacies. However, insufficiency of personalty alone will not support this implied intention. § 1770. Realty may be charged by implication if when the will was executed there was insufficient personalty to pay the legacies and the testator was aware of that fact. There is no showing that such was the factual situation in the case at bar.

As we said in *Graves:*

"It has been suggested that at the time the will was made, 1955, one-half the value of the land would not have exceeded $36,600.00 and at that time there was ample personal property to equalize the legacies to the three children. It is further suggested that the testatrix did not anticipate the appreciation of land values and therefore the court should equalize the legacies regardless of the plain and unambiguous language of the will. A court could not equalize the legacies without indulging in the most doubtful conjecture such as:

"Would the testatrix have left the will the way it was written had she realized the increase in the value of the land? She did not change her will, yet she must have known the value of lands was increasing.

"Would the testatrix have given the three children equal shares in the land had she known there would not be sufficient personal property to equalize the legacies? The fact must have been known before her death.

"Would the testatrix have made a charge against the land to equalize the legacies had she known the personal property would not be sufficient? Would she have risked the forced sale of the land to strangers in order to equalize the legacies?

"These are mere conjectures. There is nothing in the clear and unambiguous language of the will to indicate any such desire on the part of the testatrix.

"We would not encourage the suggestion that a court may wander from the actual words of a will into the region of conjecture as to what it is reasonable to suppose the testatrix would have done had she contemplated a certain event happening. A court is not free to roam such unfenced fields of speculation. We refute the notion that any canon of construction entitles a court to indulge in its imagination and go into what the testatrix would have said had she anticipated a changed condition.

"A court cannot correct a mistake made by a testatrix unless the mistake appears on the face of the instrument, and it also appears what would have been the will if the mistake had not occurred. The duty of the court is to construe not to construct the will. It is without power to modify the instrument for the purpose of making it conform to the opinion of the individual judge as to what constitutes an equitable distribution of the testator's property. Neither can it make a conjecture as to what a testatrix would have done had she foreseen the future and then build up a scheme for the purpose of carrying out what it thought would have conformed to the desire of the testatrix." 203 Kan. at 769-770.

The language of a will must be construed as of the date of its execution and in light of the then surrounding circumstances, although the will speaks at the date of death. Changes in circumstances after execution may not be considered in ascertaining the testator's intent. It is the intention of the testator spoken in the words of his will that govern and not any intention deduced from speculation as to what would have been done had the change been anticipated. 80 Am.Jur.2d, Wills § 1152. *Holmes v. Campbell College,* 87 Kan. 597, 125 Pac. 25 (1912). For other cases supporting these rules, see *Graves,* 203 Kan. at 770-1.

Appellants argue that *Graves* may be distinguished from the present case in that the Graves will provided for equalization *from her personal estate* while the Wernet will merely provides for equalization from *cash.* In *Graves* the devises were "To Have and To Hold, forever" and in the Wernet will "to be his in fee simple absolute, forever." The distinction asserted by appellants would appear to be inconsequential and without merit.

As the will does not provide for a charge upon the realty, we must next look to the statutes to determine the source of funds for payment of debts, costs of administration, taxes (except Kansas inheritance taxes) and related items. (K.S.A. 59-1405.)

Since the will does not "otherwise provide," K.S.A. 59-1405

dictates the order in which assets may be appropriated for lawful demands against the estate. Specific realty devises fit into the sixth and final classification of assets and are not to be appropriated until the first five classifications are exhausted. Moreover, in the absence of anything in the will to the contrary, the burden of federal estate taxes falls on the residuary legatees rather than on specific devises or bequests. *In re Estate of West,* 203 Kan. 404, 454 P.2d 462 (1969).

We conclude there was no error by the trial court in its finding that the real properties devised to Gerald, LeRoy and Wayne in paragraphs 3, 4 and 5 of the will vest free and clear of any charge for debts, expenses, taxes (except inheritance taxes) or cash legacies contemplated in paragraph 6 of the will.

Appellant Clifford F. Fry claims the trial court erred in finding that his three unpaid notes are assets of the decedent's estate. These notes were incurred from November 18, 1957, to April 30, 1958, and were existing debts when Mrs. Wernet executed her will on June 9, 1958. The appellant contends these notes represent advancements which were cancelled by the decedent's subsequent will containing no mention of any debt due from him.

In support of this contention, appellant cites the cases of *In re Estate of Bush,* 155 Kan. 556, 127 P.2d 455 (1942), and *Baker University v. K.S.C. of Pittsburg,* 222 Kan. 245, 564 P.2d 472 (1977). Both of these cases are concerned with the doctrine of ademption. In *Bush* the debts in question were specifically referred to as "advancements" in the notes evidencing the indebtedness. It might be well to observe that advancement is a misnomer in this case since the term only applies to intestate succession; however, we recognize that ademption and advancement, being analogous, are often used interchangeably. To apply, by analogy, advancement rules the courts require that the testator expressly provide language in the will indicating an advancement was intended. 80 Am.Jur.2d, Wills § 1720.

In the present case, there is no language in the notes that would indicate they were intended to be or considered as advancements. Furthermore, the will does not expressly provide that the notes are to be treated as advancements. Based upon the foregoing, the notes of Clifford F. Fry cannot be considered advancements but rather ordinary unsecured debts. In the alternative, it is claimed that the debts are barred by the statute of limitations.

As unsecured debts evidenced by promissory notes in writing upon which no payments have been made, the statute of limitations would be an affirmative defense in an action against appellant by the administrator c.t.a. K.S.A. 60-511. However, the statute is not a bar to a setoff to the extent of appellant's distributive share. *Holden v. Spier,* 65 Kan. 412, 70 Pac. 348 (1902).

In *Holden,* Nathaniel Head died and C. S. Holden was entitled to a share of his estate. Holden had been indebted to the decedent upon a promissory note which was barred by the statute of limitations. The administrator attempted to declare a setoff of Holden's indebtedness against his distributive share of the estate. Holden asserted, among other defenses, the bar of the statute of limitations. This court stated:

"Holden set up the statute of limitations as a bar to any reduction of his share because of indebtedness to Head or his estate. The indebtedness, or at least a portion of it, would have been barred if an ordinary action to recover it had been brought. Is the statute applicable when the question is whether the indebtedness of an heir to an estate shall be retained out of his distributive share? We think the bar of the statute cannot be interposed in such cases. The theory of the law, and it is an equitable one, is that the indebtedness of an heir of the estate should be regarded as assets of the estate already in his hands, and that his legacy or share is to that extent satisfied. It would be grossly inequitable to allow an heir to obtain his full share of an estate while he was withholding a portion of the same that was already in his hands. It has been said that 'it is against conscience that he should receive anything out of the fund without deducting therefrom the amount of that fund which is already in his hands, as a debtor to the estate.' This is not a mere question of set-off, but of equitable lien and right of retainer. (*Smith v. Kearney,* 2 Barb. Ch. 548.) Our statute of limitations is one of repose and does not raise a presumption of payment, as in some of the states. The lapse of time does not extinguish an obligation nor satisfy a debt, but the statute simply bars the remedy and prevents the use of the obligation or debt as a cause of action of affirmative defense. Some of the courts have held that the statute of limitations applies, and that there can be no deduction from a distributee's share on account of an indebtedness which is barred. (Milne's Appeal, 99 Pa. St. 483; *Allen v. Edwards,* 136 Mass. 138.) But the better, and probably the greater number of, authorities hold to the contrary view." pp. 416-417.

The trial court was not in error in its determination that Clifford's indebtedness was not cancelled by the statute of limitations. The court and the administrator c.t.a. were in error, however, in classifying Clifford's indebtedness as an "asset" of the estate and assigning a value thereto. The debt of Clifford neither adds to nor detracts from the quantum of assets owned by Maggie L. Wernet at the time of her death and cannot be consid-

ered as an "asset" in determining the total valuation of the estate. Clifford's indebtedness merely affects the method of distribution of the actual assets in the estate and does not add to those assets. The indebtedness of Clifford, together with accrued interest thereon, must be calculated and set off against Clifford's distributive share of the estate, if any.

The final point on appeal is raised by Wilbur. He contends that finding of fact number 8 made by the trial court is incorrect and erroneously directs payment of the $6,000.00 cash bequests in paragraph 8 of the will prior to any payment of cash to Wilbur and Clifford. His point has merit. The trial court in its findings referred to such bequests as "specific bequests" while Wilbur contends they are general legacies.

A specific legacy or specific bequest is defined in *Taylor v. Hull,* 121 Kan. 102, 245 Pac. 1026 (1926) as:

"A specific legacy is a bequest of some definite thing capable of identification by description from other property of the testator." Syl. 2.

"In order to make a specific legacy effective, the property bequeathed must be in existence and owned by the testator at the time of his death." Syl. 3.

96 C.J.S., Wills § 1129 (a) (1) states in part:

"A bequest of a sum of money, without designating the fund out of which it is to be paid, is a general legacy . . . ."

See also *In re Estate of West,* 203 Kan. 404.

It is apparent that the cash bequests in paragraph 8 of the will and the gifts of cash in paragraph 6 are all general legacies as no specific fund or source is specified for either. If there will be no residue in the estate the cash equalization bequests in paragraph 6 and the cash bequests in paragraph 8 must be distributed pro rata to the extent possible. K.S.A. 59-1405 and *In re Estate of Graves,* 203 Kan. 762.

The decision of the trial court is affirmed in part, reversed in part and the case remanded for further proceedings consistent with the foregoing opinion.

SCHROEDER, C.J., dissenting: I respectfully dissent for the reasons stated in my dissenting opinion in *In re Estate of Graves,* 203 Kan. 762, 772, 457 P.2d 71 (1969).

PRAGER and HERD, JJ. join in the dissent.