No. 38,131

In re Estate of J. R. CLINE, Deceased. (ANNA WABER, *Appellee*, v. HENRY ALFRED CLINE and SARAH ELIZABETH HODGES, sometimes known as Sadie M. Hodges, *Appellants.*)

(227 P. 2d 157)

Opinion filed January 27, 1951.

*Stanley E. Toland,* of Iola, argued the cause and was on the briefs for the appellants.

*G. E. Pees,* of Iola, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This appeal involves (1) the right of a daughter of her deceased father, J. R. Cline, to have a part of land devised to her exonerated from a mortgage and to have the amount thereof allowed as a claim against decedent's estate; and (2) her right to royalties paid to the executor for gravel taken from such land during the administration of decedent's estate, under a lease made by the testator.

The daughter, Anna Waber, filed an application in the probate court to obtain orders in her favor on the two matters above stated. The only other heirs, two devisees, Henry Alfred Cline, a son, and Sarah Elizabeth Hodges, a daughter, sometimes known as Sadie M. Hodges, opposed the application.

The will, omitting immaterial parts thereof, reads:

"ITEM ONE. It is my will that all my just debts be first paid.

.    .    .    .    .    .    .    .    .    .    .    .

"ITEM THREE. I GIVE, DEVISE AND BEQUEATH my real estate as follows:

"1. [Description of 410 acres of land], to my son, HENRY ALFRED CLINE and to my daughter, SADIE M. HODGES.

"2. [Description of 200 acres of land], to my daughter, ANNA WABER.

"3. My home, 802 North Jefferson, Iola, Kansas, including the furnishings to MINNIE MAYS and J. W. MAYS.

"4. All other property to be divided equally among my children."

The application of Anna Waber set forth item one and paragraph 2 of item three of the will.

The application, in substance, further alleged:

Decedent had executed a first mortgage to the Federal Land Bank of Wichita on which the unpaid balance was approximately $1,200; the mortgagee would not file a claim against decedent's estate for the debt; the debt was secured by the legacy to petitioner and the executor should be required to pay it from funds of the estate; gravel had been removed, since her father's death, from the land devised to her for which the executor had received payment and she demanded the sums so paid to him.

The answer of the two other devisees is, in substance, contained in their various contentions on appeal to be stated presently.

Property described in paragraph 3 of item three was conveyed by

decedent and is not involved. The probate court sustained the application of the petitioner, Anna Waber, in both respects, ordered the executor to pay the mortgage indebtedness and to file a release of the mortgage. The answering devisees appealed to the district court. The appeal was submitted on an agreed statement of facts as follows:

"1. That the mortgage on a part of the lands devised to Anna Waber was made by the testator, J. R. Cline, to the Federal Land Bank of Wichita, Wichita, Kansas, and that the unpaid balance thereon is $1044.65 with interest at 4% per annum from Dec. 1, 1949. That the Federal Land Bank of Wichita, Wichita, Kansas, has filed no claim or demand against the estate of the decedent on said indebtedness.

"2. That a sale of real estate of the decedent is necessary to procure funds to pay the balance due on the other claims allowed against the estate of the decedent, and the costs of administration, and that there will be no personal property in the estate of the decedent out of which said indebtedness could be paid, and that if the Court should order payment of said indebtedness, a sale of real estate of the estate of the decedent would be necessary to procure funds to pay the same. That the only real estate belonging to the estate of the decedent is the real estate described in 'Item Three' of the decedent's will devised to the appellants, Henry Alfred Cline and Sadie M. Hodges and the appellee, Anna Waber. That the home of the decedent in Iola, Kansas, was conveyed by the decedent by deed prior to his death.

"3. That after the death of the decedent, Allen County, as lessee under the lease made by the decedent, mined and removed gravel from a portion of the land devised to Anna Waber and paid to the executor the royalty thereon in the sum of $534.83, which money is in the hands of the executor.

"4. That the probate Court file in the estate of J. R. Cline, deceased, and the transcript of the proceedings involved in this appeal shall be considered in evidence without further proof thereof."

The district court likewise allowed the application of Anna Waber. The journal entry of judgment contains this finding:

"The court further finds that there is insufficient funds in the hands of the executor with which to pay the debts and costs of administration of said estate; and that the only property of said estate out of which such fund can be realized by the executor is the lands devised to the parties in this suit. The court finds that all the lands should be sold, and the debts and costs paid, and the balance divided among the legatees in proportion to the appraised value of said lands as shown from the inventory of said estate; provided, that if any legatee elects not to have the land devised to him, sold, such legatee may advance to the executor his part of the debts and costs, apportioned upon the basis of the appraised value as shown by said inventory."

Judgment was rendered accordingly.

The land devised to Anna Waber had been appraised at $6,000

and that devised to the two other devisees at $30,000. The latter have appealed.

Appellants argue a demand for the mortgage debt was not exhibited by the owner thereof, as required by G. S. 1947 Supp. 59-2237 and should not have been allowed. They also rely on G. S. 1947 Supp. 59-1303, which reads:

"When a claimant holds any security for his demand, it may be allowed, conditioned upon the claimant surrendering the security or upon the claimant exhausting the security; it shall be allowed for the full amount found to be due if the security has been surrendered, or for any remaining amount found to be due if the security has been exhausted."

and on G. S. 1947 Supp. 59-1304, which provides:

"When any assets of the estate are encumbered by mortgage, pledge, or otherwise, the executor or administrator may pay such encumbrance or any part thereof, whether or not the holder of the encumbrance has exhibited his demand, if it appears to be for the best interests of the estate and if the court shall have so ordered. No such payment shall increase the share of the devisee, legatee, or heir entitled to receive such encumbered assets, unless otherwise provided in the will."

In considering the order for the payment of the encumbrance it is apparent these various statutory provisions must be considered together. Such consideration makes it clear it was unnecessary this particular demand should be exhibited in the manner ordinarily required by G. S. 1947 Supp. 59-2237 pertaining to exhibition of demands by petition of the owner.

Appellants also argue the mortgagee had not surrendered the security. That is true but the secured demand was allowed by the probate court with directions to the executor to obtain and file a release of the security.

Appellants further contend an encumbrance cannot be paid unless such payment appears to be to the best interests of the estate and unless the court shall have so ordered and that such an order does not appear. The parties stipulated the funds in the hands of the executor were insufficient to pay the debts and costs of administration and that the only way such debts and costs could be paid was by a sale of some land devised to the parties to this action. The will directed the testator's debts should be first paid. The court had no alternative concerning the sale of land to obtain funds for that purpose. Of course, it was to the best interest of the estate, and to all the parties, to pay the mortgage debt as soon as possible in order to avoid the continued payment of interest. Under these circum-

stances we think we would not be justified in setting aside the sale of the property and the payment of the indebtedness on the ground the court did not expressly find it was to the best interests of the estate to sell land and discharge the encumbrance. Appellant argues the mortgage debt was not due and could not be ordered paid, citing G. S. 1947 Supp. 59-2240. We do not so interpret the statute.

Appellee directs attention to G. S. 1947 Supp. 59-1405, the pertinent part of which reads:

"The property of a decedent, except as provided in sections 19 [59-401] and 21 [59-403], shall be liable for the payment of his debts and other lawful demands against his estate. When a will designates the property to be appropriated for the payment of debts or other items, it shall be applied to such purpose. Unless the will provides otherwise for the payment thereof, the property of the testator, subject to the payment of debts and other items, shall be applied to that purpose in the following order: (1) Personal property not disposed of by will; (2) real estate not disposed of by will; (3) personal property bequeathed to the residuary legatee; (4) real estate devised to the residuary devisee; (5) property not specifically bequeathed or devised; (6) property specifically bequeathed or devised. . . ."

Appellee asserts, under the will and stipulated facts, classification (6) of the foregoing statute was applicable. We think the contention is sound.

What about the right of appellee to have the real estate devised to her exonerated from the encumbrance and to have the debt paid out of proceeds from the sale of land? In the absence of a provision to the contrary in a will a testator's debts are payable primarily out of his personal estate. It has been held if the personal estate in the hands of an executor is sufficient to pay the debts, and he refuses to pay them, a devisee of encumbered real estate may maintain an action to compel the executor to exonerate the encumbrance on the real estate by discharging the mortgage debt out of the personal estate. (*Smith v. Kibbe,* 104 Kan. 159, 178 Pac. 427.) In *Bowlus, Executor, v. Winters,* 117 Kan. 726, 233 Pac. 111, it was held:

"Where a probate court has jurisdiction of a testator's estate, it likewise has jurisdiction, on petition of the executor, to order the sale of realty belonging to such estate to satisfy an indebtedness secured by a mortgage thereon where the personal assets are insufficient to pay it, notwithstanding the indebtedness was not exhibited within two years to the probate court as a claim for allowance against the general estate of the testator." (Syl. ¶ 1.)

It is true the Smith and Bowlus cases, *supra,* were both decided

prior to the enactment of the new probate code in 1939 and that some provisions of the old code are no longer applicable. Did the enactment of G. S. 1947 Supp. 59-1304, previously quoted, abrogate or modify the right of exoneration laid down in those cases? If the intent was to abrogate or modify the right of exoneration it appears such intent must be found in the concluding sentence of that statute, to wit:

"No such payment shall increase the share of the devisee, legatee, or heir entitled to receive such encumbered assets, *unless otherwise provided in the will.*" (Our italics.)

It seems clear the new statute was not intended to completely abrogate the right to have devised assets exonerated from an encumbrance thereon. At most it appears the purpose of the new code was to modify the rule of exoneration in accordance with the terms of the statute merely provides the payment of the encumbrance shall not increase the share of the devisee, legatee or heir entitled to receive such encumbered assets, *unless otherwise provided in the will.* It will be observed the will devised the real estate outright to Anna Waber. It was not devised to her subject to the mortgage debt. More important, however, is the fact that item one of the will expressly provided decedent's debts should be first paid. The mortgage was one of his debts. Considering the entire will we think its fair intendment was all debts, including the mortgage debt, should first be paid and that Anna Waber should take the land devised to her free from the mortgage encumbrance.

We, of course, are aware of the fact the law requires that a decedent's debts shall be paid before devisees, legatees or heirs may share in the distribution of a decedent's estate. It is true in certain cases we have held that since this is the law a direction in a will that decedent's debts shall be paid first is perfunctory and does not add anything to the law on the subject. Here, however, we are confronted with the task of ascertaining the testator's intent, that is, whether he intended his debts should be paid first in order that appellee would take the land free of the encumbrance. In view of the phrase contained in the last sentence of G. S. 1947 Supp. 59-1304, to wit: ". . . unless otherwise provided . . .", we are obliged to scrutinize the will in order to ascertain, if possible, the testator's intent in that particular respect. Under the wording of this statute and the terms of the will we think we would not be warranted in ignoring and thus deleting the testator's expressed intention that his debts be first paid.

What an instrument is intended to accomplish must be gathered from its four corners. Where the intent can be ascertained it will be executed unless contrary to law or public policy. (*In re Estate of Koellen,* 162 Kan. 395, 176 P. 2d 544.) Where provisions of a will are clear and not inconsistent with other provisions the jurisdiction of courts is limited to interpretation, which does not include reformation. (*Sipes v. Pessemier,* 144 Kan. 300, 58 P. 2d 1085.)

In *Regnier v. Regnier,* 122 Kan. 59, 251 Pac. 392, it was said:

"While courts, in order to make clear the intention of the testator sometimes transpose words or supply obviously omitted words, it is only with extreme reluctance that the process of excision is indulged in." (p. 61.)

In the same opinion it was further stated:

" 'Words are never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant. Excision is a "desperate remedy." [Citations] It is only a last resort to be availed of when all efforts to reconcile the inconsistency by construction have failed.' [Citations]." (p. 61.)

See, also, *Sipes v. Pessemier,* supra.

In the instant case the testator's direction that his debts be first paid cannot be regarded as meaningless. In view of the problem presented that direction is highly significant and it is in nowise repugnant to any other provision of the will. On the contrary it is entirely consistent with the fact the testator did not devise the land to Anna Waber subject to the mortgage.

Appellants argue it was unnecessary to sell all of decedent's lands in order to pay his debts and costs of administration and that the order directing the sale of all land devised was void, citing *Magaw v. Emick,* 167 Kan. 580, 207 P. 2d 448. The present law on the subject of sale of lands irrespective of whether such sale is necessary for statutory purposes is discussed at length in the Magaw case and we need not repeat what is said there. Re-examination of the question convinces us that decision is sound. We, however, do not regard it as controlling here. In that case the decedent died intestate. Here he died testate devising all of his real estate to appellants and appellee. As previously stated we have concluded the testator intended the land should pass to appellee free of the encumbrance. Under these circumstances the lands devised to appellants were just as subject to sale for the payment of debts and costs of administration as the lands devised to appellee.

Which of the land devised should the executor sell? The court did not enter a mandatory order for the sale of all the lands be-

longing to the estate as was made in the Magaw case, *supra*. On the contrary the court permitted either of the parties to advance to the executor his part of the debts and costs, as previously set forth herein, if such party desired not to have his land sold. Thus the parties, without injury to any of them, could have prevented the sale of any land. If only the land devised to appellee had been sold appellants, in the final accounting and settlement of the estate, would have contributed their proportionate share of the debts and costs of administration. Likewise, appellee would have contributed in a proportionate amount if only lands devised to appellants had been sold. The election afforded by the judgment provided a method whereby either party could retain lands devised and be required to ultimately contribute no more towards the debts and costs of administration than if only land covered by any one devise had been sold. Under these circumstances we find no prejudicial error in the order made.

Was appellee entitled to the proceeds from the sale of gravel mined and removed after decedent's death from a part of the land devised to her? The inventory of the estate included no gravel belonging to decedent's estate at the time of his death. It was stipulated the gravel was mined and removed after decedent's death by the lessee under a lease made by decedent in his lifetime and that the executor had collected the royalties thereon in the sum of $534.83. The court ordered the executor to pay these royalties to appellee.

Appellants argue these earnings were personal assets to the estate and were subject to the payment of decedent's debts and costs of administration. They rely on G. S. 1947 Supp. 59-1401 which, insofar as material, provides:

"The executor or administrator shall have a right to the possession of all the property of the decedent, except the homestead and allowances to the surviving spouse and minor children. He shall pay the taxes and collect the rents and earnings thereon until the estate is settled *or until delivered by order of the court to the heirs, devisees, and legatees.* . . ." (Our italics.)

The right of the executor or administrator to collect rents and earnings during the process of administration is one thing, the proper distribution thereof is another. The first pertains to possession of property during the process of administration, the second to its distribution to those entitled thereto. The statute contemplates the possibility of such distribution prior to final settlement

in that it provides ". . . or until delivered by order of the court to the heirs, devisees, and legatees."

It appears worthy of consideration that this particular statute does not direct the "rents and earnings" from the property shall be deemed personal assets and inventoried and administered as such, as is provided in G. S. 1947 Supp. 59-1206 pertaining to annual crops whether severed or not from the land, or as is provided in G. S. 1947 Supp. 59-1409 where the executor or administrator is authorized to make a lease after decedent's death and receive the income by whatever name called. The instant lease existed on the land at the time of decedent's death. It may be well to again emphasize the funds in question were not personal property of the estate on the date of decedent's death. In fact such funds did not then exist. The gravel was mined and removed from the land thereafter.

A will speaks from and takes effect on the date of the testator's death. At that time the gravel was an integral part of the land devised and title thereto passed to appellee.

G. S. 1947 Supp. 59-614 provides:

"Every devise of real estate shall pass all the estate of the testator therein unless it clearly appears by the will that he intended a less estate to pass."

There is nothing in the instant devise to indicate the testator intended less than the entire estate in the land should pass to appellee. Under these circumstances title to the proceeds from the sale of the gravel likewise should be regarded as having passed at the same time that title to the land, including the gravel, passed. We think it becomes immaterial in this particular case whether appellee's proper share of the debts and costs of administration are paid entirely out of the proceeds of sale of land devised to her or whether her share, or a part thereof, is paid by appropriating the proceeds from the sale of gravel. In view of the judgment previously mentioned we think the substantial rights of appellants have not been prejudiced. In so concluding we have not failed to consider decisions relied on by appellants.

The judgment is affirmed.

THIELE, J., dissents from paragraph 5 of the syllabus and the corresponding part of the opinion.