Irving H. Saypol, J.
The petitioners, Fairfield Osborn and the Bank of New York, as trustees of an inter vivas trust executed on December 30, 1935, request a construction of the agreement of trust with regard to the incidence of an estate tax precipitated by the death on December 20, 1955 of one of the three settlors thereof, Virginia S. McKay, who was an income life tenant.
The petitioners seek instructions on how to charge, within the trust, the portion of the estate taxes on Mrs. McKay’s testamentary estate which will be the obligation of the trust pursuant to its provisions. The petitioners and those respondents who are Mrs. McKay’s executors urge that the charge should be made against the whole trust principal. The other respondents contend that the charge should be made exclusively against the portion of the trust principal appointed by Mrs. McKay in her will.
As stated in the petitioners’ memorandum (although not set forth in the petition), the will of William H. Osborn (Mrs. McKay’s grandfather) was probated in 1894. He entrusted his residuary estate to pay the income to his wife and his two *861 sons, Henry Fairfield Osborn and William Church Osborn, whose lives measured the' continuance of the trust. The sons were each given power of limited testamentary appointment of one half of the corpus, limited to descendants of the testator donor.
Henry Fairfield Osborn died in 1935; his brother William Church Osborn in January, 1951. The former was survived by four children, Henry Fairfield Osborn, Jr. (also known as Fairfield Osborn); A. Perry Osborn, who died in March, 1951; Mrs. McKay and Josephine 0. Coogan.
In his will, probated in 1935, Henry Fairfield Osborn appointed the income during the continuance of the trust (i.e., during his brother William’s life) to and among his children, and the principal of the trust he appointed outright in equal shares to his brother, to his nephew, Earl D. Osborn, and to his daughter, Mrs. McKay. But he also asked them to establish a trust with the appointed property for the benefit of his children and grandchildren.
These three appointees, as settlors, then executed the agreement of trust involved herein on December 30, 1935 for the irrevocable transfer to the Bank of New York of their future estate operatively effective on William’s death, in trust, for the purposes set forth therein. The property constituting the future estate became vested in possession of the corporate trustee on January 3, 1951, when William Church Osborn died. (The original testamentary trust created in 1894, was measured by his life as survivor.) The cotrustee (and now copetitioner) Fairfield Osborn was duly appointed on July 7, 1951.
Article First of the trust agreement, after providing for the payment of certain expenses in connection with the establishment of the trust, provides: ‘1 and the Trustee shall further pay from the principal any sums necessary to recoup or exonerate the Settlors, or any of them, or their estates or legal representatives, for any taxes, penalties, charges or expenses, with interest thereon, incurred by them, or any of them, or any of their estates or legal representatives by reason of these presents or the transaction here involved. This obligation shall continue a purpose of the trust throughout the continuance of the said property in trust, and shall constitute a prior charge on the principal thereof ”.
Article Second provides that the balance of the principal of the trust shall be divided into two shares, known respectively as the “ First Share ”, which comprised 56% of the value of the principal, and the “ Second Share”, comprising 44% thereof. Actual division of the property ‘ ‘ need not be made *862 until one of the said shares emerges from trusts and vests in absolute ownership. The “First Share” is to continue in trust during the lives of Henry Fairfield Osborn, Jr., and Mrs. McKay, to share the income equally as long as both of them are living. They are each given a testamentary power to appoint 25/56 of the principal of such share to and among the issue of their father, Henry Fairfield Osborn. The remaining 6/56 portion of the principal of the “First Share”, which is not subject to appointment, is limited in remainder to the then surviving issue of Josephine 0. Ooogan, if any, otherwise, to the then surviving issue of Henry Fairfield Osborn, excluding any of his four children.
The ‘ ‘ Second Share ” is to continue in trust during the lives of A. Perry Osborn and Josephine 0. Coogan, who are to share the income therefrom in stated unequal shares. They are each given a testamentary power of appointment to and among the issue of their father over stated unequal portions of the principal of such “ Second Share.”
During the continuance of the period when the trusts of both shares are in existence, provision is made in article Third for the maintenance and administration of the two trusts in solido.
Subdivision 8 of article Fifth, provides in part that “ The purposes of the trust shall include the payment of any taxes or claims arising by reason of the transfer of the corpus of this trust to the Trustee, * # * and the Trustee * * * is further authorized and empowered to make such settlements and compromises of claims or taxes as, in its best judgment, are for the interests of the beneficiaries of the trust.”
Mrs. McKay, the only one of the three settlors who as already stated was also an income beneficiary, died without issue on December 20, 1955. By her will, dated May 29, 1954, and probated January 27, 1956, she appointed 25/56 of the principal of the “First Share ” — giving 7/10 to her nephew, A. Perry Osborn, Jr., and the remaining 3/10 to and among all her nephews and nieces.
The Sixth article of the petition alleges that the trustees are advised that because Mrs. McKay as one of the settlors of the trust also reserved a life interest in part of the income, an estate tax is due and payable on the value of the share of the trust principal from which she was receiving income. That tax, it is stated, is not due to the exercise of the power of appointment by Mrs. McKay but it is based upon her having been one of the settlors.
In short, Mrs. McKay was settlor of 1/3 of the trust. She retained a life interest in 7/25 of the income (i.e., one half *863 of the income from the principal of the “ First Share ” constituting 56% of the entire trust). She also reserved the power to appoint by her will 25/56 of the principal of that share (25% of the entire trust) to and among her father’s issue, as she did. Because as one of the settlors she retained a life income interest, the share in which she retained such interest is part of her taxable estate, namely, 7/25 or 28% of the entire trust.
As stated before, the issue is whether the taxes incurred by Mrs. McKay’s estate as a result of her taxable interest in the trust, should be charged against the whole trust principal, as article First of the trust agreement might be construed to provide, or, as urged by some of the respondents (Mrs. Coogan and her children) perforce the provisions of Mrs. McKay’s will, against that portion of the trust principal appointed by Mrs. McKay in her will (i.e., 25/56 of the principal of the “ First Share ” or 25% of the entire trust). Resolution of this question necessitates a consideration of her will, concerning which the petition is silent but which is raised by the answers of the opposing respondents.
In article Second of her will Mrs. McKay disposed of certain family property in paragraphs A and B and in paragraph 0 she exercised the power of appointment granted her by the trust agreement over 25/56 of the principal of the “ First Share.” As previously noted, she gave 7/10 to her nephew, A. Perry Osborn, Jr., and the remaining 3/10 to all her nephews and nieces. By article Third she left her remaining property to her husband who survived her.
Article Sixth of the will provides: “ I direct that all estate and inheritance taxes, by whatever name called, becoming payable by reason of my death in respect to all property comprising my gross estate for tax purposes, whether or not such property passes under this my will, shall be paid as follows:
“ A. If my husband, Robert Gordon McKay, shall survive me, as to the property passing under Article Third of this my Will, said taxes shall be paid from the property disposed of by paragraph C of said article, and the amount of such taxes shall be limited to the amount which would have been payable if the property passing under said Article Third of this my will had constituted my entire taxable estate.
“ B. In the event my said husband shall survive me, the excess of such taxes over the amount payable in accordance with the provisions of Paragraph A of this Article Sixth shall be paid from the property disposed of by Article Second of this my Will and shall be apportioned among the beneficiaries under *864 said Article Second in accordance with the provisions of Section 124 of the New York Decedent Estate Law in effect at the time of my death.”
The respective contentions of the parties may be briefly summarized as follows:
Those urging that the whole trust principal shall bear the estate tax occasioned by the inclusion of trust corpus in Mrs. McKay’s taxable estate, point to the language of article First of the trust agreement. They maintain that it requires the trustees to exonerate the estates of the settlors out of the entire trust principal and constitutes a statement of a basic and continuing purpose of the trust that payment of taxes incurred because of its creation should remain a prior charge on such principal. While Mrs. McKay’s brothers and sister received interests substantially equivalent to hers in the trust, yet her taxable estate is the only one in which will be included portions of the trust principal and it would be unfair to Mrs. McKay and her appointees under the limited power of appointment to make the portion of the trust conveyed to these appointees carry the tax load. If the tax is charged against the full trust principal, the shares in the trust can continue to be administered in solido; otherwise there would need be an immediate division of the “ First Share ” according to the respective ownerships. If the entire trust is chargeable, no question would arise as to what would otherwise constitute the portion of the trust principal to be charged — whether it would be the fraction of the “ First Share” over which Mrs. McKay had a limited power of appointment among her father’s issue, namely 25/56, or that part of the whole trust over which she reserved the income, namely, 7/25 or even one third of the whole trust attributable to her as one of the three settlors. Finally —and this contention is advanced by her executors — since Mrs. McKay’s principal object in article Sixth of her will was to protect her husband from having to pay estate taxes at substantially higher rates, “ the meaning of Article Sixth B can only be to place the burden for the balance of the taxes payable by her estate, as distinguished from taxes payable by some extraneous entity, namely, the trust, upon the only other beneficiaries of her estate, those to whom she left the property she considered impressed with a family obligation. These provisions are simply internal directions for the administration of her estate.”
Those urging that the estate tax should be borne only by principal comprising that portion of the trust over which Mrs. McKay possessed and exercised a power of appointment, *865 namely, 25/56 of the trust of the “ First Share ” or 25% of the entire trust principal, point mainly to subdivision B of article Sixth of her will which they assert is controlling. According to these respondents, article First of the trust agreement fails to satisfy the test of an exception granted by section 124 of the Decedent Estate Law to nontestamentary instruments. This article does not contain a clear and specific direction for apportionment against the whole trust principal: there is an ambiguity in the word “ principal ” used therein in view of the fact that two separate and distinct trusts were created and had to be so created in the light of the New York Buie against Perpetuities. The word u principal ” should be construed to mean the principal or the portion thereof of whichever of the two trusts set up thereunder was responsible for the particular expense or tax to be imposed. Moreover, if there be a conflict between the provisions of the trust agreement and those of the will, the latter instrument, being later in time and more specific in detail, is controlling.
In the opinion of the court, the conclusion that the charge should be imposed against the portion of the trust principal appointed by Mrs. McKay in her will is well founded. While the underlying purpose of article First of the trust agreement was to exonerate the settlors or their estates for any taxes incurred by reason of the creation of the trust, its language is not so clear and explicit so as to furnish a guide for assessing such an obligation on all or only part of the principal. That the settlors should be exonerated is clear; but whether from the whole trust principal or only a portion thereof is not so clear. Under such circumstances, recourse to Mrs. McKay’s will, executed 19 years after the trust agreement, is essential.
That will shows expert draftsmanship and in article Sixth a recognition of allocation of the burden of estate taxes. In drawing her will, Mrs. McKay, in accordance with section 124 of the Decedent Estate Law, had open to her various possibilities to control payment of estate taxes. She could have directed that all taxes be paid from her residuary estate and thus completely relieve the trust from any estate taxes. Or she could have made a general direction that any taxes arising as a result of the inclusion of a portion of the trust in her gross estate should be paid as provided in the trust agreement — a provision which would have made that instrument controlling. Instead, she specificially directed that the tax should be borne by those who benefited by the exercise of her limited power of appointment over 25/56 of the trust of the “ First Share ”. Hers was the choice to make these appointees bear the tax
*868 Applying the above rules, the phrase ‘ ‘ on her death ’ ’ followed by words of present gift created a vested remainder, the enjoyment merely being postponed until the death of the intermediate life beneficiary. This application of the above rules is also in complete harmony with the “ well-settled rule in this state that a remainder is not to be considered contingent in any case where consistently with the intention of the testator, it can be construed as vested ”. (Matter of Glover, 127 N. Y. S. 2d 312, 313.)
The fact alone that the remainder is a gift to a class does not necessarily require us to find that the remainder is a contingent interest. As the court said in the case of Matter of Sweazey (2 A D 2d 292, 296-297): “ Neither does the fact that the gift of the remainder was a gift to a class rather than to persons identified by name justify the implication of a requirement of survival to the time of distribution. It is true that a class gift, by definition, is a gift to ‘ a group capable of future change in number ’ (Restatement, Property, § 279) and that, in the case of a class gift of a future interest, the class may remain open to admit additional members until the time of distribution (Restatement, Property, § 295) but ‘ From the fact that a class can increase in membership until a certain future date, no inference should be made that only such members of the class as survive to such future date become distributees’ (Restatement, Property, § 296, subd. [2] and see comment j). A distinction must constantly be kept in mind between the question of the admission of new members to the class and the question of the elimination of pre-existing members; these are two entirely separate aspects of class gifts (3 Powell on Real Property, § 365, pp. 166-167). A class gift to the children of a living person is subject to ‘ open and let ’ to admit additional children, up to the time of distribution; but a child, who has once become a member of the class, is not eliminated from membership by reason of his failure to survive to the time of distribution, unless there is an express provision to that effect in the will or unless there is some basis in the context of the will for implying such a provision. (Matter of Elting, 268 App. Div. 74, affd. 294 N. Y. 941, supra; Matter of Bigelow, 285 App. Div. 1072, affd. 309 N. Y. 884; Matter of Chalmers, 238 App. Div. 672, affd. 264 N. Y. 239; Matter of Brown, 154 N. Y. 313; Matter of Watson, 201 Misc. 193, affd. 279 App. Div. 840; Restatement, Property, § 296; 5 American Law of Property, § 21.11, p. 143).”
In summary, the concluding paragraphs of Matter of Sweazey (pp. 297-298, supra) contain some apt language with relation to the “ divide-and-pay-over ” rule: “ Finally, the appellants *869 invoke the oft-cited but rarely followed ‘ divide-and-pay-over ’ rule. Under that rule, if the" only words of gift are in the form of a direction to the trustee or executor to divide and pay over the corpus at some future time, that fact tends to support the implication of a requirement of the survival of the donees to the time of distribution. The rule has been condemned by all the leading scholars in the field and it has been explicitly rejected by the American Law Institute (Restatement, Property, § 260); 2 Powell on Real Property, § 333; 2 Simes on Future Interests, §§ 361, 394; 3 Walsh on Commentaries on Real Property, § 316). The rule has been criticised upon the ground that it makes the determination of the testator’s intention turn upon immaterial differences of phraseology and the hope has been expressed 1 that the rule will be repudiated by modern courts, since it furnishes no satisfactory basis for the determination of the intention of transferors ’ (5 American Law of Property, § 21.21, p. 162). Furthermore, the rule has been so riddled with exceptions, that it can fairly be said that the exceptions have eaten up the rule. In fact, the writers of an authoritative text have expressed the view that ‘ the rule has become no more than a make-weight argument which is employed to bolster decisions previously arrived at on some other ground ’ (p. 161).”
The account will be settled as filed.
Submit decree in accordance with this opinion.