No. 46,641

THE STATE BANK OF PARSONS, Parsons, Kansas, as Executor of the Will and Estate of William S. Phillips, deceased, et al., *Appellants*, (SHERYL BOEMLER, JEFFERSON J. BOEMLER and DIANA BOEMLER, Minors, *Appellees*) v. FIRST NATIONAL BANK IN WICHITA, Wichita, Kansas, as Trustee of WILLIAM S. PHILLIPS TRUST, and INEZ A. NEAL, *Appellees*.

(504 P. 2d 156)

Opinion filed December 9, 1972.

*James S. Phillips*, of Wichita, argued the cause and was on the brief for the appellants.

*Ronald M. Gott*, of Lilleston, Spradling, Gott, Stallwitz and Hope, of Wichita, argued the cause and was on the brief for appellee First National Bank in Wichita.

*John P. Kerr*, of Tulsa, Okla., and *Murvyl M. Sullinger*, of Pittsburg, were on the brief for appellee Inez A. Neal.

*Glenn Jones*, of Parsons, was on the brief as guardian *ad litem* for the minor appellees.

The opinion of the court was delivered by

HARMAN, C.: This is a declaratory judgment action to determine whether a revocable trust was terminated by the settlor prior to

his death. The trial court ruled that a letter to the trustee signed by the settlor did not revoke the trust. This appeal ensued.

Appellants are the executor of the estate of the settlor, William S. Phillips, deceased, and the beneficiaries named in the settlor's will, except certain minor children represented by a guardian *ad litem*, such minors also being ultimate beneficiaries under the trust agreement. The principal appellee is Inez A. Neal, named as an immediate beneficiary in the trust agreement upon the death of the settlor. Appellee First National Bank in Wichita is the trustee and has appeared throughout the action as a stakeholder.

The trust assets consisted of stocks, bonds, securities, money and other personal property. Under the trust agreement settlor was to receive the income from this property during his lifetime. The trust agreement provided that upon settlor's death Inez A. Neal was to receive $2,000 and the trustee was to retain $15,000 in trust, distributing the income from the $15,000 to Neal during her lifetime. At settlor's death all other trust property was to be distributed among settlor's children. Upon the death of Neal the trust was to terminate and the entire remaining trust estate was to be distributed to settlor's grandchildren (which group included the three minors already mentioned).

On February 25, 1971, settlor was hospitalized in Parsons, Kansas. On that date he had a telephone conversation with Elizabeth Phillips, receptionist in the Wichita law office of her husband, James S. Phillips, Sr., who was settlor's son. Settlor stated he wanted to revoke the trust in question and he desired his son to come to Parsons immediately to prepare the revocation. Since settlor's son was not able to make the trip to Parsons at the time requested, settlor then had Mr. J. J. Flynn, board chairman of the State Bank of Parsons, come that day to the Parsons hospital. Settlor had been associated in the banking business with Mr. Flynn for fifty years and was at the time a vice-president and trust officer in the bank headed by Mr. Flynn. At the hospital settlor requested Mr. Flynn to prepare a letter addressed to the trustee revoking the trust agreement. Settlor stated he wanted to get the property contained in the trust back to Parsons where it belonged and into his own hands. At the same time settlor gave Mr. Flynn two letters he had received from appellee Neal, telling him to throw them in the wastebasket. Mr. Flynn then had a letter prepared at the bank and he returned to the hospital where settlor read the letter and signed it. The relevant part of the letter, dated February 25, 1971, ad-

dressed to the trustee bank in Wichita and to the specific attention of a named trust officer, was as follows:

"I wish to terminate the living trust which I have with the First National Bank of Wichita just as soon as practicable.

"Will you please have the various certificates transferred to my name and forward them to me in care of The State Bank of Parsons. . . ."

Mr. Flynn testified that in his own trust department he would have considered the trust revoked upon receipt of the letter. The trustee bank concedes it received the letter a day or two after it was mailed February 25, 1971.

Settlor died March 11, 1971, at which time the trust assets had not been returned to him as he had requested. Apparently the trustee had received information questioning settlor's mental competency to revoke the trust and this was its only reason for not having transferred the assets prior to the filing of this action inasmuch as it considered the letter sufficient to revoke the trust.

After settlor's death appellant State Bank of Parsons was appointed executor of his estate and it commenced this action seeking a declaration that the trust had been revoked. The pleadings filed were of a general nature except the trustee bank did raise the question of settlor's competency at the time he signed the revocation letter. No pretrial conference was held for the purpose of further defining the issues. The trial court ruled that the settlor was possessed of all of his mental faculties and was competent at the critical time. It further ruled that the February 25, 1971, letter signed by the settlor did not of itself terminate the trust and that at the time of settlor's death the trustee was still owner of the trust property for all purposes of the trust.

Appellant contends this latter ruling was based on a misinterpretation of the trust agreement and it asserts the letter did revoke the trust. The question raised on appeal may be divided into two parts: (1) Whether this particular trust could be revoked by letter, without more, and (2) whether the letter sufficiently expressed settlor's present intent to revoke the trust?

The applicable standard of review for both these questions is broadly stated in *Brungardt v. Smith,* 178 Kan. 629, 290 P. 2d 1039, as follows:

"Regardless of the construction made by the trial court of a written instrument, on appeal the instrument may be construed and its legal effect determined by the supreme court." (Syl. ¶ 1.)

In *Herd v. Chambers,* 158 Kan. 614, 149 P. 2d 583, this court stated:

"The ordinary rule for the construction of written instruments applies to trust agreements and where the terms of such an agreement are plain and unambiguous the intention of the parties thereto will be ascertained from the words used therein and the legal consequences of that intention when ascertained will be given force and effect." (*Syl.* ¶ 1.)

It is familiar trust law that a settlor may revoke a trust if and to the extent that by the terms of the trust he has reserved such a power (Restatement of Trusts 2d, § 330 [1], p. 132). This principle is embodied in K. S. A. 58-2417, which provides:

"Every power, beneficial or in trust, shall be irrevocable, unless an authority to revoke it is reserved in the instrument creating the same."

The first question raised requires consideration of the trust agreement. That instrument contained the following provisions:

"Item I.

.    .    .    .    .    .    .    .    .    .    .    .    .

"(*b*) The Trustee is vested with full and complete legal and equitable title to all of the property and estate hereby transferred and entrusted to it until the termination of such trust and until such trust property shall be actually paid over, transferred and delivered to the person or persons designated as beneficiaries hereunder.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Item II.

"This trust shall be revocable in whole or in part by the Settlor at any time during his lifetime without permission of or notice to any person except by written notice to the Trustee. On the death of the Settlor, this trust shall become irrevocable."

Although the trial court did not specifically so state, it evidently considered the revocation proviso in Item II to be interrelated with and dependent upon the provisions of Item I (*b*), which vests full title in the trust assets in the trustee during the life of the trust *and* until the property is actually paid over to the beneficiaries. The trial court apparently considered, as now urged by appellee Neal, that the actual transfer of the trust corpus by the trustee back to the settlor was a prerequisite to revocation of the trust. As to this the trial court was in error.

Item II prescribes the method of revocation of the trust by the settlor; that method is—written notice by him to the trustee. Item I (*b*) is concerned with assuring to the trustee during the existence of the trust the necessary and appropriate powers to carry out its provisions and, when its purposes have been fulfilled, the same powers to get the property into the hands of the proper beneficiaries. Nothing more can be read into it.

It is true the settlor was a beneficiary of the trust as he was to receive its income during his lifetime. However, in revoking the trust he was not reclaiming the funds in his role of beneficiary— he was exercising his reserved power as settlor to terminate the trust. Item I (*b*) bears no relation to Item II and the two are not to be read together as prescribing the method of revocation.

As indicated, Item II provides for revocation of the trust upon written notice to the trustee—no more. Explicitly, the consent of no one is required nor is any action on the part of anyone else called for. By signing and delivering the letter to the trustee, settlor completed the only step required by the agreement for revocation of the trust. The obvious conclusion must be, and we so hold, that when a trust agreement provides in plain and unambiguous language for revocation by written notice to the trustee of settlor's present intent to revoke, such notice to the trustee is, without more, sufficient to effect revocation. Applied here, this means settlor could by letter delivered to the trustee revoke the trust.

We believe the second question, whether settlor's letter expressed a present intent to revoke, is also to be answered in the affirmative. The first paragraph of that letter stated: "I wish to terminate the living trust . . . just as soon as practicable." Settlor's use of the phrase "just as soon as practicable" does not under the circumstances dilute or negate a present intent to revoke. The second paragraph of the letter directed the trustee to transfer the various certificates to settlor's name and forward them to settlor. This second paragraph clearly manifested a present rather than a future intent to revoke and at the same time it shed light on that which settler intended when he used the phrase "as soon as practicable." Settlor had been in the banking business for approximately fifty years, during the latter part of which he had served as a trust officer. Presumably he was familiar with the clerical transactions necessary to transfer the trust assets back to his name and he realized time would be required to accomplish this. Settlor simply wanted action without unnecessary delay. Under these circumstances we must conclude that receipt by the trustee of the February 25th letter effectively revoked the trust and the trial court erred in holding otherwise.

The judgment is reversed.

APPROVED BY THE COURT.