(791 P.2d 41)

No. 63,777

IN THE MATTER OF THE ESTATE OF JOYCE EVANS PICKRELL, Deceased.

IN THE MATTER OF THE JOYCE EVANS PICKRELL TRUST.

Opinion
filed April 20, 1990.

*Kris J. Kuhn, John C. Nodgaard,* and *Dana D. Preheim,* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, for appellants Thomas Pickrell and Patricia Pickrell.

*Don B. Stahr* and *Gregory L. Franken,* of Bever, Dye, Mustard & Belin, of Wichita, for appellees Carl W. Sebits and Bank IV, Wichita, N.A.

*Kurt A. Harper,* of Sherwood, Hensley, Harper and Gregory, of Wichita, for appellee Patricia Pickrell Smith Bellis.

*John W. Sumi,* of Adams, Jones, Robinson and Malone, Chartered, of Wichita, guardian ad litem.

Before REES, P.J., LARSON and RULON, JJ.

RULON, J.: Thomas Pickrell and Patricia Pickrell, the son and daughter-in-law of Joyce Evans Pickrell, deceased, appeal from the district court's judgment concerning apportionment of death taxes and administration expenses. We affirm.

On June 9, 1982, Joyce Evans Pickrell executed her last will and testament and a trust indenture establishing the Joyce Evans Pickrell Trust. Carl W. Sebits and Bank IV Wichita were named co-trustees and co-executors.

Article IV, Section 12 of the trust indenture gave the trustees the power to pay all taxes imposed on the trust estate. On April 23, 1987, pursuant to the powers retained in the trust indenture, Joyce Evans Pickrell amended Section 12 to provide for apportionment of death taxes and administration expenses. The amendment directed and authorized the trustees to pay and distribute to the executors from the trust assets the trust's proportionate share of federal estate and state inheritance taxes and administration expenses. The amendment further stated that it was the settlor's intent that the trust assets and the trust and estate beneficiaries bear their respective proportionate share of all taxes and expenses.

The trust provided that, upon Joyce Evans Pickrell's death, the trust estate would be divided into four equal shares with one share each to be given to her son, Thomas Pickrell, her daughter, Patricia Pickrell Smith Bellis, and two nieces.

In the second article of her will, Joyce Evans Pickrell directed that all estate and inheritance taxes and administration expenses

"shall be paid out of the residue of my probate estate." The will further provided that the executors were not to be reimbursed or to collect any part of the taxes and expenses from any person or beneficiary under the will, and there could be no charge or recovery based on proration, apportionment, contribution, or distribution against non-probate estates or persons not deriving benefits under the will.

Under the fifth article of her will, Joyce Evans Pickrell exercised her power of appointment over the Lloyd R. Pickrell Trust No. 1, a testamentary trust created by her deceased husband. Using the words "appoint, devise and bequeath," Joyce Evans Pickrell appointed the entire trust estate of her husband's testamentary trust to a trust created for the benefit of her grandchildren and known as the Joyce E. Pickrell Testamentary Trust.

Joyce Evans Pickrell died on October 7, 1987, and her will was admitted to probate on January 11, 1988. Her survivors include her son, her daughter, five grandchildren, and the two nieces named in her inter vivos trust. Her federal estate tax return shows the value of her taxable assets as $4,984,362.45. The total amount of federal and state death taxes paid at the time of this appeal was $2,097,667.90.

After the will was admitted to probate a dispute arose regarding the trustees' interpretation of article IV, section 12 of the amended trust indenture. The trustees maintained section 12 authorized and directed them to pay to the estate a sum representing the trust's proportionate share of the death taxes and administration expenses based on the ratio of trust assets to the total taxable estate. Thomas Pickrell and his wife Patricia disagreed with this interpretation and instead asserted that section 12 was inconsistent with the second article of the will which directs the executors to pay taxes and expenses out of the residuary and not to collect any part of these taxes and expenses from any beneficiaries. The Pickrells argued that the will controlled the question of apportionment of taxes and expenses.

On August 3, 1988, the trustees filed a petition for construction of the trust indenture. One week later the Pickrells filed a petition for construction of the will. The district court consolidated the petitions and found there was no inconsistency between the will and trust indenture concerning the payment of death taxes and

administration expenses. The district court found the language of the trust amendment was clear and concise and contained the latest expression of the settlor's intent regarding apportionment of taxes and expenses. The court then directed the trustees to distribute to the executors an amount representing a proportionate part of the death taxes and administration expenses.

Additionally, the court ruled that, in exercising her power of appointment over her husband's testamentary trust, Joyce Evans Pickrell appointed the assets of her husband's trust directly to her testamentary trust. The district court further found that the second article of the will precluded the executors from seeking a contribution for any death taxes or administration expenses from Joyce Evans Pickrell's testamentary trust until the residue of the estate was exhausted.

This appeal involves two written instruments: Joyce Evans Pickrell's will and the amendment to her inter vivos trust indenture. The interpretation or construction of written instruments is a question of law that may be determined by an appellate court. *Kennedy & Mitchell, Inc. v. Anadarko Prod. Co.,* 243 Kan. 130, 133, 754 P.2d 803 (1988).

The Pickrells contend a conflict exists between Joyce Evans Pickrell's will, which directs death taxes and administration expenses to be paid out of the residuary estate, and the amendment to the trust indenture, which directs the trustees to pay the trust's proportionate share of taxes and expenses. They assert that the directions of the will should be followed and that the Kansas rule placing the federal estate tax burden on the residuary estate must be given effect. The Pickrells thus maintain the amendment to the trust indenture is ineffective and the trustees are prohibited from contributing trust assets for payment of taxes and expenses.

When the language used in a will is challenged, the first duty of a trial or appellate court is to determine whether the will is ambiguous. *In re Estate of Brecklein,* 6 Kan. App. 2d 1001, 1007, 637 P.2d 444 (1981). Where a will is not ambiguous, extrinsic evidence of intent is inadmissible. *In re Estate of Brecklein,* 6 Kan. App. 2d at 1007. The basic principles of will construction are summarized in *Russell v. Estate of Russell,* 216 Kan. 730, 534 P.2d 261 (1975):

"In construing a will courts must (a) arrive at the intention of the testator from an examination of the whole instrument, if consistent with rules of law, giving . . . every single provision thereof a practicable operative effect, (b) uphold it if possible, (c) avoid any interpretation resulting in intestacy when possible, (d) give supreme importance to the intention of the testator, and (e) when the language found in such instrument is clearly and unequivocally expressed determine the intent and purpose of the testator without resort to rules of judicial construction applicable to the interpretation of an instrument which is uncertain, indefinite and ambiguous in its terms." Syl. ¶ 1.

When the testator's intent is clearly and unequivocally expressed, the will must be enforced in accordance with its provisions. *In re Estate of Wernet,* 226 Kan. 97, Syl. ¶ 1, 596 P.2d 137 (1979). The court should not consider the rules of judicial construction to determine the testator's intent if the language of the will is clear, definite, and unambiguous. 226 Kan. 97, Syl. ¶ 2. Further, although a will speaks at the date of death, the language of a will must be construed as of the date of its execution and in light of the then surrounding circumstances. 226 Kan. at 106.

The rules for construing a trust are similar to those governing will construction. The settlor's intent is to be determined from the four corners of the trust instrument. See *In re Estate of Sutcliffe,* 199 Kan. 686, 692, 433 P.2d 389 (1967). If the language of the trust instrument is plain and unambiguous, the intent of the settlor must be ascertained from the language used and given effect. *State Bank of Parsons v. First National Bank in Wichita,* 210 Kan. 647, Syl. ¶ 2, 504 P.2d 156 (1972).

In the present case, we are convinced there is no uncertainty or ambiguity regarding the payment of estate and inheritance taxes and administration expenses in Joyce Evans Pickrell's will. The second article of her will directs the executors to pay death taxes and expenses out of the residue of the estate. Additionally, it prohibits the executors from collecting such taxes or expenses from beneficiaries under the will. The language used in the second article clearly expresses the testator's intent regarding the payment of death taxes and administration expenses.

In Kansas, absent an expressed intent to the contrary, the burden of the federal estate taxes falls upon the residuary estate. *Dittmer v. Schmidt,* 235 Kan. 697, 701, 683 P.2d 1252 (1984).

In contrast, absent a direction to the contrary, Kansas inheritance taxes are to be paid from the assets of the estate so that each distributive share bears an equitable proportion of such taxes. K.S.A. 79-1564(d); *Wendland v. Washburn University*, 8 Kan. App. 2d 778, 779, 667 P.2d 915 (1983). These rules do not come into play in the instant case because of Joyce Evans Pickrell's express directions regarding death taxes and expenses.

Furthermore, the language of the trust indenture and amendment are plain and unambiguous. The amendment to section 12 of article IV of the trust instrument directs the trustees to pay to the estate the trust's proportionate share of estate and inheritance taxes and administration expenses.

Generally, inter vivos trusts, as part of a coordinated estate plan, may include a provision instructing the trustee to pay the trust's ratable share of the death taxes and expenses. See Nothern and Wachter, *The Ultimate Burden of the Federal Estate Tax in Kansas—A Dilemma for Executors*, 17 Washburn L.J. 231, 244-49 (1978). Notably, K.S.A. 79-1564(d), which provides that each distributive share of estate assets will bear a proportionate share of the inheritance taxes, permits the decedent to avoid this statutory scheme by so directing in either a will or a trust agreement.

Here, read separately, both the will and the trust indenture, as amended, are unambiguous and, therefore, do not require this court to resort to judicial construction to determine the decedent's intent. The will charges the executors to pay death taxes and expenses from the residuary estate and not to collect any of the taxes and expenses from any of the beneficiaries under the will. Meanwhile, the trust amendment directs the trustees to pay to the estate the trust's proportionate share of the taxes. Although better drafting could have made these provisions appear more coordinated, they are essentially consistent with one another.

The language of the will does not prohibit the executors from accepting the trustees' proffer of the trust's proportionate share of taxes and expenses. Instead, except for the residuary estate, the executors are prohibited from charging any trust beneficiary for taxes and expenses. This prohibition does not render the estate unable to accept the funds paid by the trustees pursuant to the amended trust instrument. Following the testator's intent as

stated in both the will and trust instrument does not produce an inconsistency.

Moreover, even if there is a perceived inconsistency, the trust provision should be given effect because it is the later instrument and, thus, the most recent expression of the decedent's intent. Under the Pickrells' interpretation, the directions set forth in the trust amendment are ineffective and essentially meaningless. The problem with this position is that it requires the last clear statement of the decedent's intent concerning taxes and expenses to be ignored. Such a result is not consistent with Joyce Evans Pickrell's execution of a trust amendment five years after the execution of her will.

In summary, we believe the tax provisions of Joyce Evans Pickrell's will and amended trust indenture unambiguously express her intent and are not inconsistent. Thus, the trustees, as directed by the amended trust instrument, may pay to the estate the trust's proportionate share of estate and inheritance taxes and administration expenses.

In light of our determination above, we need not reach the remaining issues presented.

Affirmed.

LARSON, J., concurring: The trial court and our majority have reached the correct result, and, while I do not disagree with the general statements of law of the majority opinion, I differ from the majority's reasoning in reaching the same result.

The second article of the will provides:

"[A]ll Federal estate taxes . . . and all inheritance . . . taxes . . ., whether or not attributed to properties subject to probate administration,. . . and all expenses of administration of my estate, shall be paid out of the residue of my probate estate.
My executors shall not be reimbursed for, nor collect, any part of such taxes or estate administration costs . . ., nor shall there be any charge or recovery therefore [sic] . . . against persons not deriving benefits under this Will."

This provision is in direct conflict to and inconsistent with the directions of the Settlor's Amendment to Joyce Pickrell Trust, Trust Indenture of June 9, 1982, which provided:

"Trustees are hereby directed and authorized to pay and distribute to Settlor's executors . . ., from the assets of the Trust, such portion of the total

Federal estate, State inheritance taxes and administration expenses . . . in the share or proportion that the value of the assets of the Trust . . . shall bear to the total value of all assets . . . included in Settlor's estate . . . ."

When the payment to the executors is made by the trustees, there has clearly been a "recovery therefore [*sic*] . . . against persons not deriving benefits under this Will [the beneficiaries of the trust]."

The usage of "shall" rather than "may" in the tax clause of the will must be construed as mandatory that there shall not be any "recovery" from an outside source of funds.

We should not justify our result on the reasoning that, because the will does not prohibit acceptance of a proffered payment by the trustees, the wording of the two documents is consistent. The testator's intent in the will is directly contrary to and in opposition with that expressed in the trust's amendment. The inconsistency between the documents is actual and existing, not "perceived."

Joyce Evans Pickrell's intent in the last instrument she executed is clear. This is stated in the last sentence of the amended Section 12 of her trust as follows:

"It is Settlor's intent by the preceding sentence that the Trust assets, the share of each beneficiary of the Trust, and the shares of the beneficiaries of Settlor's estate outside this Trust, be charged with and bear respective their proportionate share of all Federal estate, State inheritance tax and expenses of administration determined to be due and payable by Settlor's estate."

The intent was stated April 23, 1987, almost five years after the will was executed on June 9, 1982.

When a conflict exists between an earlier executed will and a later executed inter vivos trust, the last instrument in time controls. 42 Am. Jur. 2d, Inheritance, Etc., Taxes § 352. See also Annot., Will Provision—Estate or Inheritance Tax, 69 A.L.R. 3d 122, 215, which recognizes the rule that, in case of a conflict between the provisions of a will and an inter vivos trust, the later instrument will control.

Although Kansas has no cases directly on point, the general rule from other jurisdictions is that, when the provisions of a trust agreement are in conflict with the provisions of a will, the instrument being later in time controls. *Matter of Osborn*, 8 Misc.

2d 859, 866, 166 N.Y.S.2d 446 (1957). See *In Re Estate of Strohm*, 241 So. 2d 167 (Fla. Dist. App. 1970).

Appellants' contention is that the will's provisions should control because "a will speaks from the time of the testator's death, unless it plainly shows a contrary intention, and is to be construed as operating according to conditions then existing," citing *In re Estate of Laue*, 225 Kan. 177, 182, 589 P.2d 558 (1979), and *In re Estate of Ellertson*, 157 Kan. 492, 497, 142 P.2d 724 (1943). *Ellertson* cited 69 C.J., Wills § 1168, p. 128, which stated:

"The rule making a will speak as though executed immediately before the death of the testator related, it has been explained, to the effect and operation of the instrument rather than to its construction, but, as regards the intention of the testator, the will is to be construed as of the date of execution."

Usage of the date of execution as the time for determination of intent is clear from *In re Estate of Wernet*, 226 Kan. 97, 106, 596 P.2d 137 (1979).

Nobody would disagree that in cases such as this our primary function is to ascertain and carry out the decedent's intent. *In re Estate of Cline*, 170 Kan. 496, 227 P.2d 157 (1951). Here this intent is clear and is plainly stated in the last document Joyce Evans Pickrell executed, the amended inter vivos trust.

REES, J., concurring: Joyce Evans Pickrell died testate on October 7, 1987. Her will, executed on June 9, 1982, was duly admitted to probate.

During her lifetime, the decedent was the beneficiary of a testamentary trust (Trust No. 1) established by her late husband, Lloyd R. Pickrell. She also was the donee of a general power of appointment for the Trust No. 1 trust estate, exercisable by will. The decedent exercised that power by including this in her will:

"I hereby intend to and by this Will do fully exercise said power of appointment and appoint . . . the entire trust estate of TRUST NO. 1 . . . to my trustees hereinafter named . . . for the use and benefit of my grandchildren . . . . This trust shall be known as the Joyce E. Pickrell Testamentary Trust . . . ."

The will provides for certain specific bequests, the sale of decedent's residential properties by her executors, and the disposition of tangible personal property pursuant to K.S.A. 59-623.

It then provides that "[a]ll the rest, residue and remainder of my estate . . . I give, devise and bequeath unto [the trustees of the Joyce E. Pickrell Testamentary Trust], and such property shall become a part of the [Testamentary Trust]."

The now significant text of the will is this:

"I direct that *all . . . estate taxes . . . and all inheritance . . . taxes* payable upon or resulting from or by reason of my death, *whether or not attributed to properties subject to probate administration, and all . . . expenses of administration of my estate, shall be paid out of the residue of my probate estate. My executors shall not be reimbursed for, nor collect, any part of such taxes or estate administration costs from any person,* legatee, devisee, *or beneficiary under this Will, nor shall there be any charge or recovery [therefor]* upon the basis of proration, apportionment, contribution, distribution, or otherwise, *against estates not included in my probate estate, or against persons not receiving benefits under this Will."* (Emphasis added.)

By a trust indenture executed contemporaneously with the execution of her will in 1982, the decedent, as settlor, established a revocable inter vivos trust for the benefit of herself for life with the remainder to her two children and two nieces. Some five years later, on April 23, 1987, the decedent altered and amended the inter vivos trust indenture to read in part:

"[U]pon the death of Settlor, . . . *[the] Trustees are hereby directed and authorized to pay and distribute to Settlor's executors . . . from the assets of [this inter vivos trust], such portion of the total Federal estate, State inheritance taxes and administration expenses . . . due and payable . . . by reason of Settlor's death, in the share or proportion that the value of the assets of [this trust] . . . shall bear to the total value of all assets, including the value of the assets of this Trust . . . included in . . . determining the taxes due and payable . . . by Settlor's estate. It is Settlor's intent . . . that [this trust's] assets,* the share of each beneficiary of [this] Trust, and the shares of the beneficiaries of Settlor's estate outside this Trust, *be charged with and bear* [respectively] their *proportionate share of all Federal estate, State inheritance tax and expenses of administration* determined to be due and payable by Settlor's estate." (Emphasis added.)

In sum, the trial court held, and we hold, that by the foregoing text of the decedent's will and the inter vivos trust indenture, as amended, the inter vivos trust trustees are charged with the duty to pay to the decedent's executors a sum equivalent to the inter vivos trust's proportion of the estate and inheritance taxes and administration expenses payable by reason of the death of

Mrs. Pickrell with the proportion being the ratio that the inter vivos trust's assets bear to the decedent's taxable estate, including the inter vivos trust.

I agree with Judge Larson that the will and trust indenture here are inconsistent and, therefore, in conflict.

Based on a theory of last expressed intent, it seems to be a general rule that, when a trust instrument's directions for payment of death taxes conflict with directions in the settlor's will, the instrument executed later in time controls. *Matter of Osborn*, 8 Misc. 2d 859, 866, 166 N.Y.S.2d 446 (1957).

Inasmuch as the supporting authorities cited by the parties and found in our research concern only wills and trust instruments, I conclude that the "rule" of last expressed intent as to responsibility for payment of death taxes applies to will and trust instrument conflict cases only. This is consistent with related provisions in the Kansas Inheritance Tax Act. K.S.A. 79-1537d; K.S.A. 79-1538.

No authority cited or found has applied the rule of last expressed intent as to responsibility for payment of death taxes other than where a will and a conflicting trust instrument are involved. That leads me to conclude that the last expressed intent effect is not to be afforded to a later instrument that conflicts with a will or trust instrument in those instances where the later instrument is not a will or trust instrument. That, of course, is not the case before us.

Further, I am satisfied that acceptance here of the last expressed intent theory is limited to cases where responsibility for payment of or reimbursement for death taxes is the subject.